No. 23-7061

# In the United States Court of Appeals for the District of Columbia Circuit

_____

ANDREW HANSON, ET AL.,

*Plaintiffs-Appellants*,

v.

THE DISTRICT OF COLUMBIA, ET AL.,

*Defendants-Appellees*,

_____

**INITIAL BRIEF OF APPELLANTS - ADDENDUM**

_____

On Appeal from the United States District Court
for the District of Columbia (No. 1:22-Cv-02256-Rc)

_____

George L. Lyon, Jr.
BERGSTROM ATTORNEYS
1929 Biltmore Street, NW
Washington, DC 20009
*gll@bergstromattorneys.com*
202-669-0442 (phone)
202-483-9267 (facsimile)

Edward M. Wenger
Dennis W. Polio
Mateo Forero-Norena
Zachary D. Henson
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643A
Washington, DC 20037
*emwenger@holtzmanvogel.com*
(202) 737-8808 (phone)
(540) 341-8809 (facsimile)

*Counsel for Plaintiffs-Appellants*

TABLE OF CONTENTS

18 U.S.C. § 922 ................................................................................ A-1

28 U.S.C. § 1292 ........................................................................... A-26

28 U.S.C. § 1331 ........................................................................... A-29

42 U.S.C. § 1983 ........................................................................... A-30

Col. Rev. Stat. § 18-12-302 .......................................................... A-31

Conn. Gen. Stat. § 53-202w .......................................................... A-33

D.C. Code § 7-2502.01 .................................................................. A-37

D.C. Code § 7-2502.02 .................................................................. A-40

D.C. Code § 7-2502.03 .................................................................. A-43

D.C. Code § 7-2506.01 .................................................................. A-51

D.C. Code § 7-2507.06 .................................................................. A-53

D.C. Code § 22-3571.01 ................................................................ A-56

D.C. Code § 22-4506 ..................................................................... A-58

Haw. Rev. Stat. § 134-8 ................................................................ A-60

Mass. Gen. Laws ch. 140, §§ 121, 131 .......................................... A-62

1927 Mich. Laws 887 .................................................................... A-78

Minn. Laws 231, 232 .................................................................... A-86

Va. Code § 18.2-288 ...................................................................... A-89

*18 USCS § 922, Part 1 of 4*

Current through Public Law 118-13, approved August 7, 2023.

*United States Code Service > TITLE 18. CRIMES AND CRIMINAL PROCEDURE (§§ 1 — 6005) > Part I. Crimes (Chs. 1 — 123) > CHAPTER 44. Firearms (§§ 921 — 934)*

## § 922. Unlawful acts [Caution: See prospective amendment note below.]

**(a)**  It shall be unlawful—

**(1)**  for any person—

**(A)**  except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce; or

**(B)**  except a licensed importer or licensed manufacturer, to engage in the business of importing or manufacturing ammunition, or in the course of such business, to ship, transport, or receive any ammunition in interstate or foreign commerce;

**(2)**  for any importer, manufacturer, dealer, or collector licensed under the provisions of this chapter [*18 USCS §§ 921* et seq.] to ship or transport in interstate or foreign commerce any firearm to any person other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, except that—

**(A)**  this paragraph and subsection (b)(3) shall not be held to preclude a licensed importer, licensed manufacturer, licensed dealer, or licensed collector from returning a firearm or replacement firearm of the same kind and type to a person from whom it was received; and this paragraph shall not be held to preclude an individual from mailing a firearm owned in compliance with Federal, State, and local law to a licensed importer, licensed manufacturer, licensed dealer, or licensed collector;

**(B)**  this paragraph shall not be held to preclude a licensed importer, licensed manufacturer, or licensed dealer from depositing a firearm for conveyance in the mails to any officer, employee, agent, or watchman who, pursuant to the provisions of section 1715 of this title [*18 USCS § 1715*], is eligible to receive through the mails pistols, revolvers, and other firearms capable of being concealed on the person, for use in connection with his official duty; and

**(C)** nothing in this paragraph shall be construed as applying in any manner in the District of Columbia, the Commonwealth of Puerto Rico, or any possession of the United States differently than it would apply if the District of Columbia, the Commonwealth of Puerto Rico, or the possession were in fact a State of the United States;

**(3)** for any person other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the State where he resides (or if the person is a corporation or other business entity, the State where it maintains a place of business) any firearm purchased or otherwise obtained by such person outside that State, except that this paragraph (A) shall not preclude any person who lawfully acquires a firearm by bequest or intestate succession in a State other than his State of residence from transporting the firearm into or receiving it in that State, if it is lawful for such person to purchase or possess such firearm in that State, (B) shall not apply to the transportation or receipt of a firearm obtained in conformity with subsection (b)(3) of this section, and (C) shall not apply to the transportation of any firearm acquired in any State prior to the effective date of this chapter [effective Dec. 16, 1968];

**(4)** for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, to transport in interstate or foreign commerce any destructive device, machinegun (as defined in *section 5845 of the Internal Revenue Code of 1954* [1986] [*26 USCS § 5845*]), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Attorney General consistent with public safety and necessity;

**(5)** for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the transferor resides; except that this paragraph shall not apply to (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the loan or rental of a firearm to any person for temporary use for lawful sporting purposes;

**(6)** for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or

misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter [*18 USCS §§ 921* et seq.];

**(7)** for any person to manufacture or import armor piercing ammunition, unless—

**(A)** the manufacture of such ammunition is for the use of the United States, any department or agency of the United States, any State, or any department, agency, or political subdivision of a State;

**(B)** the manufacture of such ammunition is for the purpose of exportation; or

**(C)** the manufacture or importation of such ammunition is for the purpose of testing or experimentation and has been authorized by the Attorney General;

**(8)** for any manufacturer or importer to sell or deliver armor piercing ammunition, unless such sale or delivery—

**(A)** is for the use of the United States, any department or agency of the United States, any State, or any department, agency, or political subdivision of a State;

**(B)** is for the purpose of exportation; or

**(C)** is for the purpose of testing or experimentation and has been authorized by the Attorney General; [and]

**(9)** for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, who does not reside in any State to receive any firearms unless such receipt is for lawful sporting purposes.

**(b)** It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

**(1)** any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age;

**(2)** any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance;

A-3

18 USCS § 922, Part 1 of 4

**(3)** any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the licensee's place of business is located, except that this paragraph (A) shall not apply to the sale or delivery of any rifle or shotgun to a resident of a State other than a State in which the licensee's place of business is located if the transferee meets in person with the transferor to accomplish the transfer, and the sale, delivery, and receipt fully comply with the legal conditions of sale in both such States (and any licensed manufacturer, importer or dealer shall be presumed, for purposes of this subparagraph, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States), and (B) shall not apply to the loan or rental of a firearm to any person for temporary use for lawful sporting purposes;

**(4)** to any person any destructive device, machinegun (as defined in *section 5845 of the Internal Revenue Code of 1954* [1986] [*26 USCS § 5845*]), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Attorney General consistent with public safety and necessity; and

**(5)** any firearm or armor-piercing ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter [*18 USCS § 923*], the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

Paragraphs (1), (2), (3), and (4) of this subsection shall not apply to transactions between licensed importers, licensed manufacturers, licensed dealers, and licensed collectors. Paragraph (4) of this subsection shall not apply to a sale or delivery to any research organization designated by the Attorney General.

**(c)** In any case not otherwise prohibited by this chapter [*18 USCS §§ 921* et seq.], a licensed importer, licensed manufacturer, or licensed dealer may sell a firearm to a person who does not appear in person at the licensee's business premises (other than another licensed importer, manufacturer, or dealer) only if—

**(1)** the transferee submits to the transferor a sworn statement in the following form:

Subject to penalties provided by law, I swear that, in the case of any firearm other than a shotgun or a rifle, I am twenty-one years or more of age, or that, in the case of a shotgun or a rifle, I am eighteen years or more of age; that I am not prohibited by the provisions of chapter 44 of title 18, United States Code [*18 USCS §§ 921* et seq.], from receiving a firearm in interstate or foreign commerce; and that my receipt of this firearm will not be in violation

A-4

of any statute of the State and published ordinance applicable to the locality in which I reside. Further, the true title, name, and address of the principal law enforcement officer of the locality to which the firearm will be delivered are

......................................................

Signature.................................. Date...................

and containing blank spaces for the attachment of a true copy of any permit or other information required pursuant to such statute or published ordinance;

**(2)** the transferor has, prior to the shipment or delivery of the firearm, forwarded by registered or certified mail (return receipt requested) a copy of the sworn statement, together with a description of the firearm, in a form prescribed by the Attorney General, to the chief law enforcement officer of the transferee's place of residence, and has received a return receipt evidencing delivery of the statement or has had the statement returned due to the refusal of the named addressee to accept such letter in accordance with United States Post Office Department [United States Postal Service] regulations; and

**(3)** the transferor has delayed shipment or delivery for a period of at least seven days following receipt of the notification of the acceptance or refusal of delivery of the statement.

A copy of the sworn statement and a copy of the notification to the local law enforcement officer, together with evidence of receipt or rejection of that notification shall be retained by the licensee as a part of the records required to be kept under section 923(g) [*18 USCS § 923(g)*].

**(d)** It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile—

**(1)** is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

**(2)** is a fugitive from justice;

**(3)** is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (*21 U.S.C. 802*));

**(4)** has been adjudicated as a mental defective or has been committed to any mental institution at 16 years of age or older;

**(5)** who, being an alien—

**(A)** is illegally or unlawfully in the United States; or

A-5

**(B)** except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (*8 U.S.C. 1101(a)(26)*));

**(6)** [who] has been discharged from the Armed Forces under dishonorable conditions;

**(7)** who, having been a citizen of the United States, has renounced his citizenship;

**(8)** is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that—

    **(A)** was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; and

    **(B)**

        **(i)** includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

        **(ii)** by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

**(9)** has been convicted in any court of a misdemeanor crime of domestic violence;

**(10)** intends to sell or otherwise dispose of the firearm or ammunition in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking offense (as such terms are defined in section 932(a) [*18 USCS § 932(a)*]); or

**(11)** intends to sell or otherwise dispose of the firearm or ammunition to a person described in any of paragraphs (1) through (10).

This subsection shall not apply with respect to the sale or disposition of a firearm or ammunition to a licensed importer, licensed manufacturer, licensed dealer, or licensed collector who pursuant to subsection (b) of section 925 [*18 USCS § 925*] is not precluded from dealing in firearms or ammunition, or to a person who has been granted relief from disabilities pursuant to subsection (c) of section 925 [*18 USCS § 925*].

**(e)** It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers,

licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter [*18 USCS §§ 921* et seq.]. No common or contract carrier shall require or cause any label, tag, or other written notice to be placed on the outside of any package, luggage, or other container that such package, luggage, or other container contains a firearm.

**(f)**

**(1)**  It shall be unlawful for any common or contract carrier to transport or deliver in interstate or foreign commerce any firearm or ammunition with knowledge or reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of the provisions of this chapter [*18 USCS §§ 921* et seq.].

**(2)**  It shall be unlawful for any common or contract carrier to deliver in interstate or foreign commerce any firearm without obtaining written acknowledgement of receipt from the recipient of the package or other container in which there is a firearm.

**(g)**  It shall be unlawful for any person—

**(1)**  who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

**(2)**  who is a fugitive from justice;

**(3)**  who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (*21 U.S.C. 802*));

**(4)**  who has been adjudicated as a mental defective or who has been committed to a mental institution;

**(5)**  who, being an alien—

**(A)**  is illegally or unlawfully in the United States; or

**(B)**  except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (*8 U.S.C. 1101(a)(26)*));

**(6)**  who has been discharged from the Armed Forces under dishonorable conditions;

A-7

**(7)** who, having been a citizen of the United States, has renounced his citizenship;

**(8)** who is subject to a court order that—

**(A)** was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

**(B)** restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

**(C)**

**(i)** includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

**(ii)** by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

**(9)** who has been convicted in any court of a misdemeanor crime of domestic violence,

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**(h)** It shall be unlawful for any individual, who to that individual's knowledge and while being employed for any person described in any paragraph of subsection (g) of this section, in the course of such employment—

**(1)** to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce; or

**(2)** to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**(i)** It shall be unlawful for any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

**(j)** It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

**(k)**  It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered, or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

**(l)**  Except as provided in section 925(d) of this chapter [*18 USCS § 925(d)*], it shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter [*18 USCS §§ 921* et seq.].

**(m)**  It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter [*18 USCS § 923*] or regulations promulgated thereunder.

**(n)**  It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**(o)**

    **(1)**  Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

    **(2)**  This subsection does not apply with respect to—

        **(A)**  a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

        **(B)**  any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect [effective May 19, 1986].

**(p)**

    **(1)**  It shall be unlawful for any person to manufacture, import, sell, ship, deliver, possess, transfer, or receive any firearm—

(**A**)  that, after removal of grips, stocks, and magazines, is not as detectable as the Security Exemplar, by walk-through metal detectors calibrated and operated to detect the Security Exemplar; or

(**B**)  any major component of which, when subjected to inspection by the types of x-ray machines commonly used at airports, does not generate an image that accurately depicts the shape of the component. Barium sulfate or other compounds may be used in the fabrication of the component.

(**2**)  For purposes of this subsection—

(**A**)  the term "firearm" does not include the frame or receiver of any such weapon;

(**B**)  the term "major component" means, with respect to a firearm, the barrel, the slide or cylinder, or the frame or receiver of the firearm; and

(**C**)  the term "Security Exemplar" means an object, to be fabricated at the direction of the Attorney General, that is—

(**i**)  constructed of, during the 12-month period beginning on the date of the enactment of this subsection, 3.7 ounces of material type 17-4 PH stainless steel in a shape resembling a handgun; and

(**ii**)  suitable for testing and calibrating metal detectors:

*Provided, however* , That at the close of such 12-month period, and at appropriate times thereafter the Attorney General shall promulgate regulations to permit the manufacture, importation, sale, shipment, delivery, possession, transfer, or receipt of firearms previously prohibited under this subparagraph that are as detectable as a "Security Exemplar" which contains 3.7 ounces of material type 17-4 PH stainless steel, in a shape resembling a handgun, or such lesser amount as is detectable in view of advances in state-of-the-art developments in weapons detection technology.

(**3**)  Under such rules and regulations as the Attorney General shall prescribe, this subsection shall not apply to the manufacture, possession, transfer, receipt, shipment, or delivery of a firearm by a licensed manufacturer or any person acting pursuant to a contract with a licensed manufacturer, for the purpose of examining and testing such firearm to determine whether paragraph (1) applies to such firearm. The Attorney General shall ensure that rules and regulations adopted pursuant to this paragraph do not impair the manufacture of prototype firearms or the development of new technology.

(**4**)  The Attorney General shall permit the conditional importation of a firearm by a licensed importer or licensed manufacturer, for examination and testing to

determine whether or not the unconditional importation of such firearm would violate this subsection.

**(5)** This subsection shall not apply to any firearm which—

**(A)** has been certified by the Secretary of Defense or the Director of Central Intelligence, after consultation with the Attorney General and the Administrator of the Federal Aviation Administration, as necessary for military or intelligence applications; and

**(B)** is manufactured for and sold exclusively to military or intelligence agencies of the United States.

**(6)** This subsection shall not apply with respect to any firearm manufactured in, imported into, or possessed in the United States before the date of the enactment of the Undetectable Firearms Act of 1988 [enacted Nov. 10, 1988].

**(q)**

**(1)** The Congress finds and declares that—

**(A)** crime, particularly crime involving drugs and guns, is a pervasive, nationwide problem;

**(B)** crime at the local level is exacerbated by the interstate movement of drugs, guns, and criminal gangs;

**(C)** firearms and ammunition move easily in interstate commerce and have been found in increasing numbers in and around schools, as documented in numerous hearings in both the Committee on the Judiciary [of] the House of Representatives and the Committee on the Judiciary of the Senate;

**(D)** in fact, even before the sale of a firearm, the gun, its component parts, ammunition, and the raw materials from which they are made have considerably moved in interstate commerce;

**(E)** while criminals freely move from State to State, ordinary citizens and foreign visitors may fear to travel to or through certain parts of the country due to concern about violent crime and gun violence, and parents may decline to send their children to school for the same reason;

**(F)** the occurrence of violent crime in school zones has resulted in a decline in the quality of education in our country;

**(G)** this decline in the quality of education has an adverse impact on interstate commerce and the foreign commerce of the United States;

**(H)** States, localities, and school systems find it almost impossible to handle gun-related crime by themselves—even States, localities, and school systems

that have made strong efforts to prevent, detect, and punish gun-related crime find their efforts unavailing due in part to the failure or inability of other States or localities to take strong measures; and

**(I)** the Congress has the power, under the interstate commerce clause and other provisions of the Constitution, to enact measures to ensure the integrity and safety of the Nation's schools by enactment of this subsection.

**(2)**

**(A)** It shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone.

**(B)** Subparagraph (A) does not apply to the possession of a firearm—

**(i)** on private property not part of school grounds;

**(ii)** if the individual possessing the firearm is licensed to do so by the State in which the school zone is located or a political subdivision of the State, and the law of the State or political subdivision requires that, before an individual obtains such a license, the law enforcement authorities of the State or political subdivision verify that the individual is qualified under law to receive the license;

**(iii)** that is—

**(I)** not loaded; and

**(II)** in a locked container, or a locked firearms rack that is on a motor vehicle;

**(iv)** by an individual for use in a program approved by a school in the school zone;

**(v)** by an individual in accordance with a contract entered into between a school in the school zone and the individual or an employer of the individual;

**(vi)** by a law enforcement officer acting in his or her official capacity; or

**(vii)** that is unloaded and is possessed by an individual while traversing school premises for the purpose of gaining access to public or private lands open to hunting, if the entry on school premises is authorized by school authorities.

**(3)**

(**A**)  Except as provided in subparagraph (B), it shall be unlawful for any person, knowingly or with reckless disregard for the safety of another, to discharge or attempt to discharge a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the person knows is a school zone.

(**B**)  Subparagraph (A) does not apply to the discharge of a firearm—

(**i**)  on private property not part of school grounds;

(**ii**)  as part of a program approved by a school in the school zone, by an individual who is participating in the program;

(**iii**)  by an individual in accordance with a contract entered into between a school in a school zone and the individual or an employer of the individual; or

(**iv**)  by a law enforcement officer acting in his or her official capacity.

(**4**)  Nothing in this subsection shall be construed as preempting or preventing a State or local government from enacting a statute establishing gun free school zones as provided in this subsection.

(**r**)  It shall be unlawful for any person to assemble from imported parts any semiautomatic rifle or any shotgun which is identical to any rifle or shotgun prohibited from importation under section 925(d)(3) of this chapter [*18 USCS § 925(d)(3)*] as not being particularly suitable for or readily adaptable to sporting purposes except that this subsection shall not apply to—

(**1**)  the assembly of any such rifle or shotgun for sale or distribution by a licensed manufacturer to the United States or any department or agency thereof or to any State or any department, agency, or political subdivision thereof; or

(**2**)  the assembly of any such rifle or shotgun for the purposes of testing or experimentation authorized by the Attorney General.

(**s**)

(**1**)  Beginning on the date that is 90 days after the date of enactment of this subsection [enacted Nov. 30, 1993] and ending on the day before the date that is 60 months after such date of enactment, it shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell, deliver, or transfer a handgun (other than the return of a handgun to the person from whom it was received) to an individual who is not licensed under section 923 [*18 USCS § 923*], unless—

(**A**)  after the most recent proposal of such transfer by the transferee—

(**i**)  the transferor has—

**(I)**  received from the transferee a statement of the transferee containing the information described in paragraph (3);

**(II)**  verified the identity of the transferee by examining the identification document presented;

**(III)**  within 1 day after the transferee furnishes the statement, provided notice of the contents of the statement to the chief law enforcement officer of the place of residence of the transferee; and

**(IV)**  within 1 day after the transferee furnishes the statement, transmitted a copy of the statement to the chief law enforcement officer of the place of residence of the transferee; and

**(ii)**

**(I)**  5 business days (meaning days on which State offices are open) have elapsed from the date the transferor furnished notice of the contents of the statement to the chief law enforcement officer, during which period the transferor has not received information from the chief law enforcement officer that receipt or possession of the handgun by the transferee would be in violation of Federal, State, or local law; or

**(II)**  the transferor has received notice from the chief law enforcement officer that the officer has no information indicating that receipt or possession of the handgun by the transferee would violate Federal, State, or local law;

**(B)**  the transferee has presented to the transferor a written statement, issued by the chief law enforcement officer of the place of residence of the transferee during the 10-day period ending on the date of the most recent proposal of such transfer by the transferee, stating that the transferee requires access to a handgun because of a threat to the life of the transferee or of any member of the household of the transferee;

**(C)**

**(i)**  the transferee has presented to the transferor a permit that—

**(I)**  allows the transferee to possess or acquire a handgun; and

**(II)**  was issued not more than 5 years earlier by the State in which the transfer is to take place; and

**(ii)**  the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a handgun by the transferee would be in violation of the law;

A-14

**(D)**  the law of the State requires that, before any licensed importer, licensed manufacturer, or licensed dealer completes the transfer of a handgun to an individual who is not licensed under section 923 [*18 USCS § 923*], an authorized government official verify that the information available to such official does not indicate that possession of a handgun by the transferee would be in violation of law;

**(E)**  the Attorney General has approved the transfer under *section 5812 of the Internal Revenue Code of 1986* [*26 USCS § 5812*]; or

**(F)**  on application of the transferor, the Attorney General has certified that compliance with subparagraph (A)(i)(III) is impracticable because—

**(i)**  the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;

**(ii)**  the business premises of the transferor at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer; and

**(iii)**  there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

**(2)**  A chief law enforcement officer to whom a transferor has provided notice pursuant to paragraph (1)(A)(i)(III) shall make a reasonable effort to ascertain within 5 business days whether receipt or possession would be in violation of the law, including research in whatever State and local recordkeeping systems are available and in a national system designated by the Attorney General.

**(3)**  The statement referred to in paragraph (1)(A)(i)(I) shall contain only—

**(A)**  the name, address, and date of birth appearing on a valid identification document (as defined in section 1028(d)(1) [*18 USCS § 1028(d)(1)*]) of the transferee containing a photograph of the transferee and a description of the identification used;

**(B)**  a statement that the transferee—

**(i)**  is not under indictment for, and has not been convicted in any court of, a crime punishable by imprisonment for a term exceeding 1 year, and has not been convicted in any court of a misdemeanor crime of domestic violence;

**(ii)**  is not a fugitive from justice;

**(iii)**  is not an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act [*21 USCS § 802*]);

(iv)  has not been adjudicated as a mental defective or been committed to a mental institution;

(v)  is not an alien who—

(I)  is illegally or unlawfully in the United States; or

(II)  subject to subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (*8 U.S.C. 1101(a)(26)*));

(vi)  has not been discharged from the Armed Forces under dishonorable conditions; and

(vii)  is not a person who, having been a citizen of the United States, has renounced such citizenship;

(C)  the date the statement is made; and

(D)  notice that the transferee intends to obtain a handgun from the transferor.

(4)  Any transferor of a handgun who, after such transfer, receives a report from a chief law enforcement officer containing information that receipt or possession of the handgun by the transferee violates Federal, State, or local law shall, within 1 business day after receipt of such request, communicate any information related to the transfer that the transferor has about the transfer and the transferee to—

(A)  the chief law enforcement officer of the place of business of the transferor; and

(B)  the chief law enforcement officer of the place of residence of the transferee.

(5)  Any transferor who receives information, not otherwise available to the public, in a report under this subsection shall not disclose such information except to the transferee, to law enforcement authorities, or pursuant to the direction of a court of law.

(6)

(A)  Any transferor who sells, delivers, or otherwise transfers a handgun to a transferee shall retain the copy of the statement of the transferee with respect to the handgun transaction, and shall retain evidence that the transferor has complied with subclauses (III) and (IV) of paragraph (1)(A)(i) with respect to the statement.

(B)  Unless the chief law enforcement officer to whom a statement is transmitted under paragraph (1)(A)(i)(IV) determines that a transaction would violate Federal, State, or local law—

(i)  the officer shall, within 20 business days after the date the transferee made the statement on the basis of which the notice was provided, destroy the statement, any record containing information derived from the statement, and any record created as a result of the notice required by paragraph (1)(A)(i)(III);

(ii)  the information contained in the statement shall not be conveyed to any person except a person who has a need to know in order to carry out this subsection; and

(iii)  the information contained in the statement shall not be used for any purpose other than to carry out this subsection.

(C)  If a chief law enforcement officer determines that an individual is ineligible to receive a handgun and the individual requests the officer to provide the reason for such determination, the officer shall provide such reasons to the individual in writing within 20 business days after receipt of the request.

(7)  A chief law enforcement officer or other person responsible for providing criminal history background information pursuant to this subsection shall not be liable in an action at law for damages—

(A)  for failure to prevent the sale or transfer of a handgun to a person whose receipt or possession of the handgun is unlawful under this section; or

(B)  for preventing such a sale or transfer to a person who may lawfully receive or possess a handgun.

(8)  For purposes of this subsection, the term "chief law enforcement officer" means the chief of police, the sheriff, or an equivalent officer or the designee of any such individual.

(9)  The Attorney General shall take necessary actions to ensure that the provisions of this subsection are published and disseminated to licensed dealers, law enforcement officials, and the public.

(t)

(1)  Beginning on the date that is 30 days after the Attorney General notifies licensees under section 103(d) of the Brady Handgun Violence Prevention Act [note to this section] that the national instant criminal background check system is established, a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter [*18 USCS §§ 921* et seq.], unless—

**(A)** before the completion of the transfer, the licensee contacts the national instant criminal background check system established under section 103 of that Act [note to this section];

**(B)**

**(i)** the system provides the licensee with a unique identification number; or

**(ii)** subject to subparagraph (C), 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that the receipt of a firearm by such other person would violate subsection (g) or (n) of this section, or State, local, or Tribal law;

**(C)** in the case of a person less than 21 years of age, in addition to all other requirements of this chapter [*18 USCS §§ 921* et seq.]—

**(i)** the system provides the licensee with a unique identification number;

**(ii)** 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d); or

**(iii)** in the case of such a person with respect to whom the system notifies the licensee in accordance with clause (ii) that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d), 10 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that—

**(I)** transferring the firearm to the other person would violate subsection (d) of this section; or

**(II)** receipt of a firearm by the other person would violate subsection (g) or (n) of this section, or State, local, or Tribal law; and

**(D)** the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title [*18 USCS § 1028(d)*]) of the transferee containing a photograph of the transferee.

**(2)** If transfer or receipt of a firearm would not violate section 922(d), (g), or (n) [*18 USCS § 922(d)*, (g), or (n)] (as applicable) or State, local or Tribal law, the system shall—

**(A)** assign a unique identification number to the transfer;

**(B)** provide the licensee with the number; and

(C)  destroy all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer.

(3)  Paragraph (1) shall not apply to a firearm transfer between a licensee and another person if—

(A)

(i)  such other person has presented to the licensee a permit that—

(I)  allows such other person to possess or acquire a firearm; and

(II)  was issued not more than 5 years earlier by the State in which the transfer is to take place; and

(ii)  the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law;

(B)  the Attorney General has approved the transfer under *section 5812 of the Internal Revenue Code of 1986* [*26 USCS § 5812*]; or

(C)  on application of the transferor, the Attorney General has certified that compliance with paragraph (1)(A) is impracticable because—

(i)  the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;

(ii)  the business premises of the licensee at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer (as defined in subsection (s)(8)); and

(iii)  there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

(4)  If the national instant criminal background check system notifies the licensee that the information available to the system does not demonstrate that the transfer of a firearm to or receipt of a firearm by such other person would violate subsection (d), (g), or (n) (as applicable) or State[,] local or Tribal law, and the licensee transfers a firearm to such other person, the licensee shall include in the record of the transfer the unique identification number provided by the system with respect to the transfer.

(5)  If the licensee knowingly transfers a firearm to such other person and knowingly fails to comply with paragraph (1) of this subsection with respect to the transfer and, at the time such other person most recently proposed the

transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that transfer of a firearm to or receipt of a firearm by such other person would violate subsection (d), (g), or (n) (as applicable) of this section or State[,] local or Tribal law, the Attorney General may, after notice and opportunity for a hearing, suspend for not more than 6 months or revoke any license issued to the licensee under section 923 [*18 USCS § 923*], and may impose on the licensee a civil fine of not more than $5,000.

**(6)**  Neither a local government nor an employee of the Federal Government or of any State or local government, responsible for providing information to the national instant criminal background check system shall be liable in an action at law for damages—

**(A)**  for failure to prevent the sale or transfer of a firearm to a person whose receipt or possession of the firearm is unlawful under this section; or

**(B)**  for preventing such a sale or transfer to a person who may lawfully receive or possess a firearm.

**(u)**  It shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.

**(v), (w)**  [Repealed]

**(x)**

**(1)**  It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—

**(A)**  a handgun; or

**(B)**  ammunition that is suitable for use only in a handgun.

**(2)**  It shall be unlawful for any person who is a juvenile to knowingly possess—

**(A)**  a handgun; or

**(B)**  ammunition that is suitable for use only in a handgun.

**(3)**  This subsection does not apply to—

**(A)**  a temporary transfer of a handgun or ammunition to a juvenile or to the possession or use of a handgun or ammunition by a juvenile if the handgun and ammunition are possessed and used by the juvenile—

**(i)** in the course of employment, in the course of ranching or farming related to activities at the residence of the juvenile (or on property used for ranching or farming at which the juvenile, with the permission of the property owner or lessee, is performing activities related to the operation of the farm or ranch), target practice, hunting, or a course of instruction in the safe and lawful use of a handgun;

**(ii)** with the prior written consent of the juvenile's parent or guardian who is not prohibited by Federal, State, or local law from possessing a firearm, except—

**(I)** during transportation by the juvenile of an unloaded handgun in a locked container directly from the place of transfer to a place at which an activity described in clause (i) is to take place and transportation by the juvenile of that handgun, unloaded and in a locked container, directly from the place at which such an activity took place to the transferor; or

**(II)** with respect to ranching or farming activities as described in clause (i), a juvenile may possess and use a handgun or ammunition with the prior written approval of the juvenile's parent or legal guardian and at the direction of an adult who is not prohibited by Federal, State or local law from possessing a firearm;

**(iii)** the juvenile has the prior written consent in the juvenile's possession at all times when a handgun is in the possession of the juvenile; and

**(iv)** in accordance with State and local law;

**(B)** a juvenile who is a member of the Armed Forces of the United States or the National Guard who possesses or is armed with a handgun in the line of duty;

**(C)** a transfer by inheritance of title (but not possession) of a handgun or ammunition to a juvenile; or

**(D)** the possession of a handgun or ammunition by a juvenile taken in defense of the juvenile or other persons against an intruder into the residence of the juvenile or a residence in which the juvenile is an invited guest.

**(4)** A handgun or ammunition, the possession of which is transferred to a juvenile in circumstances in which the transferor is not in violation of this subsection shall not be subject to permanent confiscation by the Government if its possession by the juvenile subsequently becomes unlawful because of the conduct of the juvenile, but shall be returned to the lawful owner when such

handgun or ammunition is no longer required by the Government for the purposes of investigation or prosecution.

**(5)** For purposes of this subsection, the term "juvenile" means a person who is less than 18 years of age.

**(6)**

> **(A)** In a prosecution of a violation of this subsection, the court shall require the presence of a juvenile defendant's parent or legal guardian at all proceedings.

> **(B)** The court may use the contempt power to enforce subparagraph (A).

> **(C)** The court may excuse attendance of a parent or legal guardian of a juvenile defendant at a proceeding in a prosecution of a violation of this subsection for good cause shown.

**(y) Provisions relating to aliens admitted under nonimmigrant visas.**

**(1)** Definitions. In this subsection—

> **(A)** the term "alien" has the same meaning as in section 101(a)(3) of the Immigration and Nationality Act (*8 U.S.C. 1101(a)(3)*); and

> **(B)** the term "nonimmigrant visa" has the same meaning as in section 101(a)(26) of the Immigration and Nationality Act (*8 U.S.C. 1101(a)(26)*).

**(2)** Exceptions. Subsections (d)(5)(B), (g)(5)(B), and (s)(3)(B)(v)(II) do not apply to any alien who has been lawfully admitted to the United States under a nonimmigrant visa, if that alien is—

> **(A)** admitted to the United States for lawful hunting or sporting purposes or is in possession of a hunting license or permit lawfully issued in the United States;

> **(B)** an official representative of a foreign government who is—

>> **(i)** accredited to the United States Government or the Government's mission to an international organization having its headquarters in the United States; or

>> **(ii)** en route to or from another country to which that alien is accredited;

> **(C)** an official of a foreign government or a distinguished foreign visitor who has been so designated by the Department of State; or

> **(D)** a foreign law enforcement officer of a friendly foreign government entering the United States on official law enforcement business.

**(3)** Waiver.

**(A)** Conditions for waiver. Any individual who has been admitted to the United States under a nonimmigrant visa may receive a waiver from the requirements of subsection (g)(5), if—

**(i)** the individual submits to the Attorney General a petition that meets the requirements of subparagraph (C); and

**(ii)** the Attorney General approves the petition.

**(B)** Petition. Each petition under subparagraph (B) shall—

**(i)** demonstrate that the petitioner has resided in the United States for a continuous period of not less than 180 days before the date on which the petition is submitted under this paragraph; and

**(ii)** include a written statement from the embassy or consulate of the petitioner, authorizing the petitioner to acquire a firearm or ammunition and certifying that the alien would not, absent the application of subsection (g)(5)(B), otherwise be prohibited from such acquisition under subsection (g).

**(C)** Approval of petition. The Attorney General shall approve a petition submitted in accordance with this paragraph, if the Attorney General determines that waiving the requirements of subsection (g)(5)(B) with respect to the petitioner—

**(i)** would be in the interests of justice; and

**(ii)** would not jeopardize the public safety.

**(z) Secure gun storage or safety device.**

**(1)** In general. Except as provided under paragraph (2), it shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell, deliver, or transfer any handgun to any person other than any person licensed under this chapter [*18 USCS §§ 921* et seq.], unless the transferee is provided with a secure gun storage or safety device (as defined in section 921(a)(34) [*18 USCS § 921(a)(34)*]) for that handgun.

**(2)** Exceptions. Paragraph (1) shall not apply to—

**(A)**

**(i)** the manufacture for, transfer to, or possession by, the United States, a department or agency of the United States, a State, or a department, agency, or political subdivision of a State, of a handgun; or

A-23

(ii)  the transfer to, or possession by, a law enforcement officer employed by an entity referred to in clause (i) of a handgun for law enforcement purposes (whether on or off duty); or

**(B)**  the transfer to, or possession by, a rail police officer directly employed by or contracted by a rail carrier and certified or commissioned as a police officer under the laws of a State of a handgun for purposes of law enforcement (whether on or off duty);

**(C)**  the transfer to any person of a handgun listed as a curio or relic by the Secretary pursuant to section 921(a)(13) [*18 USCS § 921(a)(13)*]; or

**(D)**  the transfer to any person of a handgun for which a secure gun storage or safety device is temporarily unavailable for the reasons described in the exceptions stated in section 923(e) [*18 USCS § 923(e)*], if the licensed manufacturer, licensed importer, or licensed dealer delivers to the transferee within 10 calendar days from the date of the delivery of the handgun to the transferee a secure gun storage or safety device for the handgun.

**(3)**  Liability for use.

**(A)**  In general. Notwithstanding any other provision of law, a person who has lawful possession and control of a handgun, and who uses a secure gun storage or safety device with the handgun, shall be entitled to immunity from a qualified civil liability action.

**(B)**  Prospective actions. A qualified civil liability action may not be brought in any Federal or State court.

**(C)**  Defined term. As used in this paragraph, the term "qualified civil liability action"—

(i)  means a civil action brought by any person against a person described in subparagraph (A) for damages resulting from the criminal or unlawful misuse of the handgun by a third party, if—

**(I)**  the handgun was accessed by another person who did not have the permission or authorization of the person having lawful possession and control of the handgun to have access to it; and

**(II)**  at the time access was gained by the person not so authorized, the handgun had been made inoperable by use of a secure gun storage or safety device; and

(ii)  shall not include an action brought against the person having lawful possession and control of the handgun for negligent entrustment or negligence per se.

A-24

[Appendix A repealed]

## History

---

**HISTORY:**

Added June 19, 1968, *P. L. 90-351*, Title IV, § 902, *82 Stat. 228*; Oct. 22, 1968, *P. L. 90-618*, Title I, § 102, *82 Stat. 1216*; Dec. 21, 1982, *P. L. 97-377*, Title I, § 165(a), 96 Stat. 1923; May 19, 1986, *P. L. 99-308*, § 102, *100 Stat. 451*; Aug. 28, 1986, *P. L. 99-408*, § 2, *100 Stat. 920*; Nov. 11, 1988, *P. L. 100-649*, § 2(a), *102 Stat. 3816*; Nov. 18, 1988, *P. L. 100-690*, Title VII, Subtitle B, § 7060(c), *102 Stat. 4404*; Nov. 29, 1990, *P. L. 101-647*, Title XVII, § 1702(b)(1), Title XXII, §§ 2201, 2202, 2204(b), Title XXXV, § 3524, *104 Stat. 4844*, 4856, 4857, 4924; Nov. 30, 1993, *P. L. 103-159*, Title I, § 102(a)(1), (b), Title III, § 302(a)–(c), *107 Stat. 1536*, 1539, 1545; Sept. 13, 1994, *P. L. 103-322*, Title XI, Subtitle A, §§ 110102(a), 110103(a), 110106, Subtitle B, § 110201(a), Subtitle D, § 110401(b), (c), Subtitle E, §§ 110511, 110514, Title XXXII, Subtitle I, §§ 320904, 320927, Title XXXIII, § 330011(i), *108 Stat. 1996*, 1998, 2000, 2010, 2014, 2019, 2125, 2131, 2145; Oct. 11, 1996, *P. L. 104-294*, Title VI, § 603(b), (c)(1), (d), (e), (f)(1), (g), *110 Stat. 3503*, 3504; Sept. 30, 1996, *P. L. 104-208*, Div A, Title I, § 101(f) [Title VI, §§ 657, 658(b)], *110 Stat. 3009*-369, 3009-372; Oct. 21, 1998, *P. L. 105-277*, Div A, § 101(b) [Title I, § 121], *112 Stat. 2681*-71; Nov. 2, 2002, *P. L. 107-273*, Div B, Title IV, § 4003(a)(1), *116 Stat. 1811*; Nov. 25, 2002, *P. L. 107-296*, Title XI, Subtitle B, § 1112(f)(4), (6), *116 Stat. 2276*; Oct. 26, 2005, *P. L. 109-92*, §§ 5(c)(1), 6(a), *119 Stat. 2099*, 2101; Dec. 4, 2015, *P. L. 114-94*, Div A, Title XI, Subtitle D, § 11412(c)(2), *129 Stat. 1688*; Mar. 15, 2022, *P.L. 117-103*, Div W, Title XI, § 1104(b), *136 Stat. 921*; June 25, 2022, *P.L. 117-159*, Div A, Title II, §§ 12001(a)(1), 12004(b), *136 Stat. 1322*, 1329.

United States Code Service
Copyright © 2023 All rights reserved.

---

## *28 USCS § 1292, Part 1 of 2*

Current through Public Law 118-13, approved August 7, 2023.

*United States Code Service > TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE (§§ 1 — 5001) > Part IV. Jurisdiction and Venue (Chs. 81 — 99) > CHAPTER 83. Courts of Appeals (§§ 1291 — 1296)*

## § 1292. Interlocutory decisions

**(a)** Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

**(1)** Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

**(2)** Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

**(3)** Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

**(b)** When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**(c)** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

A-26

**(1)** of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title [*28 USCS § 1295*]; and

**(2)** of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

**(d)**

**(1)** When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title [*28 USCS § 256(b)*], or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(2)** When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title [*28 USCS § 798(b)*], or when any judge of the United States Claims Court [United States Court of Federal Claims], in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

**(3)** Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Claims Court [Court of Federal Claims], as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Claims Court [Court of Federal Claims] or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

**(4)**

**(A)** The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands,

granting or denying, in whole or in part, a motion to transfer an action to the United States Claims Court [United States Court of Federal Claims] under section 1631 of this title [*28 USCS § 1631*].

**(B)**  When a motion to transfer an action to the Claims Court [Court of Federal Claims] is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Claims Court [Court of Federal Claims] pursuant to the motion shall be carried out.

**(e)**  The Supreme Court may prescribe rules, in accordance with section 2072 of this title [*28 USCS § 2072*], to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

## History

## HISTORY:

June 25, 1948, ch 646, *62 Stat. 929*; Oct. 31, 1951, ch 655, § 49, *65 Stat. 726*; July 7, 1958, *P. L. 85-508*, § 12(e), *72 Stat. 348*; Sept. 2, 1958, *P. L. 85-919*, *72 Stat. 1770*; April 2, 1982, *P. L. 97-164*, Title I, Part A, § 125, *96 Stat. 36*; Nov. 8, 1984, *P. L. 98-620*, Title IV, Subtitle C, § 412, *98 Stat. 3362*; Nov. 19, 1988, *P. L. 100-702*, Title V, § 501, *102 Stat. 4652*; Oct. 29, 1992, *P. L. 102-572*, Title I, § 101, Title IX, § 906(c), *106 Stat. 4506*, 4518.

United States Code Service
Copyright © 2023 All rights reserved.

*28 USCS § 1331, Part 1 of 3*

Current through Public Law 118-13, approved August 7, 2023.

*United States Code Service  >  TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE (§§ 1 — 5001)  >  Part IV. Jurisdiction and Venue (Chs. 81 — 99)  >  CHAPTER 85. District Courts; Jurisdiction (§§ 1330 — 1389)*

## § 1331. Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## History

**HISTORY:**

June 25, 1948, ch 646, *62 Stat. 930*; July 25, 1958, *P. L. 85-554*, § 1, *72 Stat. 415*; Oct. 21, 1976, *P. L. 94-574*, § 2, *90 Stat. 2721*; Dec. 1, 1980, *P. L. 96-486*, § 2(a), *94 Stat. 2369*.

United States Code Service
Copyright © 2023 All rights reserved.

*42 USCS § 1983, Part 1 of 16*

Current through Public Law 118-13, approved August 7, 2023.

*United States Code Service  >  TITLE 42. THE PUBLIC HEALTH AND WELFARE (Chs. 1 — 164)  >  CHAPTER 21. CIVIL RIGHTS (§§ 1981 — 2000h-6)  >  GENERALLY (§§ 1981 — 1996b)*

## § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## History

**HISTORY:**

R. S. § 1979; Dec. 29, 1979, *P. L. 96-170*, § 1, *93 Stat. 1284*; Oct. 19, 1996, *P. L. 104-317*, Title III, § 309(c), *110 Stat. 3853*.

United States Code Service
Copyright © 2023 All rights reserved.

**End of Document**

*C.R.S. 18-12-302*

Statutes current through all legislation from the 2023 Regular Session effective as of June 30, 2023. The text of this section is not final. It will not be final until compared to, and updated from, the text provided by the Colorado Office of Legislative Legal Services later this year.

*Colorado Revised Statutes Annotated  >  Title 18. Criminal Code  (Arts. 1 — 26)  >  Article 12. Offenses Relating to Firearms and Weapons  (Pts. 1 — 5)  >  Part 3. Large-Capacity Ammunition Magazines  (§§ 18-12-301 — 18-12-303)*

## 18-12-302. Large-capacity magazines prohibited - penalties - exceptions.

**(1)**

**(a)**  Except as otherwise provided in this section, on and after July 1, 2013, a person who sells, transfers, or possesses a large-capacity magazine commits a class 2 misdemeanor.

**(b)**  Repealed.

**(c)**  Any person who violates this subsection (1) commits a class 6 felony if the person possessed a large-capacity magazine during the commission of a felony or any crime of violence, as defined in section 18-1.3-406.

**(2)**

**(a)**  A person may possess a large-capacity magazine if he or she:

**(I)**  Owns the large-capacity magazine on July 1, 2013; and

**(II)**  Maintains continuous possession of the large-capacity magazine.

**(b)**  If a person who is alleged to have violated subsection (1) of this section asserts that he or she is permitted to legally possess a large-capacity magazine pursuant to paragraph (a) of this subsection (2), the prosecution has the burden of proof to refute the assertion.

**(3)**  The offense described in subsection (1) of this section shall not apply to:

**(a)**  An entity, or any employee thereof engaged in his or her employment duties, that manufactures large-capacity magazines within Colorado exclusively for transfer to, or any licensed gun dealer, as defined in section 18-12-506 (6), or any employee thereof engaged in his or her official employment duties, that sells large-capacity magazines exclusively to:

A-31

**(I)**  A branch of the armed forces of the United States;

**(II)**  A department, agency, or political subdivision of the state of Colorado, or of any other state, or of the United States government;

**(III)**  A firearms retailer for the purpose of firearms sales conducted outside the state;

**(IV)**  A foreign national government that has been approved for such transfers by the United States government; or

**(V)**  An out-of-state transferee who may legally possess a large-capacity magazine; or

**(b)**  An employee of any of the following agencies who bears a firearm in the course of his or her official duties:

**(I)**  A branch of the armed forces of the United States; or

**(II)**  A department, agency, or political subdivision of the state of Colorado, or of any other state, or of the United States government; or

**(c)**  A person who possesses the magazine for the sole purpose of transporting the magazine to an out-of-state entity on behalf of a manufacturer of large-capacity magazines within Colorado.

## History

**Source: L. 2013:**Entire part added,*(HB 13-1224), ch. 48, p. 145, § 1*, effective July 1.
**L. 2018:**IP(3)(a) amended,*(SB 18-032), ch. 8, p. 153, § 7*, effective October 1.
**L. 2021:**(1)(b)(II) added by revision,*(SB 21-271), ch. 462, pp. 3213, 3331, §§ 351, 803*.

Colorado Revised Statutes Annotated
Copyright © 2023 All rights reserved.

*Conn. Gen. Stat. § 53-202w*

Current through 2023 Regular Session Act approved by the Governor on or before July 1, 2023

*LexisNexis® Connecticut Annotated Statutes  > Title 53 Crimes (Chs. 938 — 949g)  > Chapter 943 Offenses Against Public Peace and Safety (§§ 53-169 — 53-215a)*

**Notice**

🚩 This section has more than one version with varying effective dates.

**Sec. 53-202w. Large capacity magazines. Definitions. Sale, transfer or possession prohibited. Exceptions. [Effective October 1, 2023]**

(a)  As used in this section and *section 53-202x:*

(1)  "Large capacity magazine" means any firearm magazine, belt, drum, feed strip or similar device that has the capacity of, or can be readily restored or converted to accept, more than ten rounds of ammunition, but does not include: (A) A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds of ammunition, (B) a .22 caliber tube ammunition feeding device, (C) a tubular magazine that is contained in a lever-action firearm, or (D) a magazine that is permanently inoperable;

(2)  "Lawfully possesses", with respect to a large capacity magazine, means that a person has (A) actual and lawful possession of the large capacity magazine, (B) constructive possession of the large capacity magazine pursuant to a lawful purchase of a firearm that contains a large capacity magazine that was transacted prior to or on April 4, 2013, regardless of whether the firearm was delivered to the purchaser prior to or on April 4, 2013, which lawful purchase is evidenced by a writing sufficient to indicate that (i) a contract for sale was made between the parties prior to or on April 4, 2013, for the purchase of the firearm, or (ii) full or partial payment for the firearm was made by the purchaser to the seller of the firearm prior to or on April 4, 2013, or (C) actual possession under subparagraph (A) of this subdivision, or constructive possession under subparagraph (B) of this subdivision, as evidenced by a written statement made under penalty of false

Conn. Gen. Stat. § 53-202w

statement on such form as the Commissioner of Emergency Services and Public Protection prescribes; and

**(3)** "Licensed gun dealer" means a person who has a federal firearms license and a permit to sell firearms pursuant to *section 29-28*.

**(b)** Except as provided in this section, on and after April 5, 2013, any person who, within this state, distributes, imports into this state, keeps for sale, offers or exposes for sale, or purchases a large capacity magazine shall be guilty of a class D felony. On and after April 5, 2013, any person who, within this state, transfers a large capacity magazine, except as provided in subsection (f) of this section, shall be guilty of a class D felony.

**(c)** Except as provided in this section and *section 53-202x*: (1) Any person who possesses a large capacity magazine on or after January 1, 2014, that was obtained prior to April 5, 2013, shall commit an infraction and be fined not more than ninety dollars for a first offense and shall be guilty of a class D felony for any subsequent offense, and (2) any person who possesses a large capacity magazine on or after January 1, 2014, that was obtained on or after April 5, 2013, shall be guilty of a class D felony.

**(d)** A large capacity magazine may be possessed, purchased or imported by:

**(1)** The Department of Emergency Services and Public Protection, police departments, the Department of Correction, the Division of Criminal Justice, the Department of Motor Vehicles, the Department of Energy and Environmental Protection or the military or naval forces of this state or of the United States;

**(2)** A sworn and duly certified member of an organized police department, the Division of State Police within the Department of Emergency Services and Public Protection or the Department of Correction, a chief inspector or inspector in the Division of Criminal Justice, a salaried inspector of motor vehicles designated by the Commissioner of Motor Vehicles, a conservation officer or special conservation officer appointed by the Commissioner of Energy and Environmental Protection pursuant to *section 26-5*, or a constable who is certified by the Police Officer Standards and Training Council and appointed by the chief executive authority of a town, city or borough to perform criminal law enforcement duties, for use by such sworn member, inspector, officer or constable in the discharge of such sworn member's, inspector's, officer's or constable's official duties or when off duty;

**(3)** A member of the military or naval forces of this state or of the United States;

**(4)** A nuclear facility licensed by the United States Nuclear Regulatory Commission for the purpose of providing security services at such facility, or any

A-34

contractor or subcontractor of such facility for the purpose of providing security services at such facility;

**(5)** Any person who is sworn and acts as a policeman on behalf of an armored car service pursuant to *section 29-20* in the discharge of such person's official duties; or

**(6)** Any person, firm or corporation engaged in the business of manufacturing large capacity magazines in this state that manufactures, purchases, tests or transports large capacity magazines in this state for sale within this state to persons specified in subdivisions (1) to (5), inclusive, of this subsection or for sale outside this state, or a federally-licensed firearm manufacturer engaged in the business of manufacturing firearms or large capacity magazines in this state that manufactures, purchases, tests or transports firearms or large capacity magazines in this state for sale within this state to persons specified in subdivisions (1) to (5), inclusive, of this subsection or for sale outside this state.

**(e)** A large capacity magazine may be possessed by:

**(1)** A licensed gun dealer;

**(2)** A gunsmith who is in a licensed gun dealer's employ, who possesses such large capacity magazine for the purpose of servicing or repairing a lawfully possessed large capacity magazine;

**(3)** A person, firm, corporation or federally-licensed firearm manufacturer described in subdivision (6) of subsection (d) of this section that possesses a large capacity magazine that is lawfully possessed by another person for the purpose of servicing or repairing the large capacity magazine;

**(4)** Any person who has declared possession of the magazine pursuant to *section 53-202x*; or

**(5)** Any person who is the executor or administrator of an estate that includes a large capacity magazine, or the trustee of a trust that includes a large capacity magazine, the possession of which has been declared to the Department of Emergency Services and Public Protection pursuant to *section 53-202x*, which is disposed of as authorized by the Probate Court, if the disposition is otherwise permitted by this section and *section 53-202x*.

**(f)** Subsection (b) of this section shall not prohibit:

**(1)** The transfer of a large capacity magazine, the possession of which has been declared to the Department of Emergency Services and Public Protection pursuant to *section 53-202x*, by bequest or intestate succession, or, upon the death of a testator or settlor: (A) To a trust, or (B) from a trust to a beneficiary;

**(2)**  The transfer of a large capacity magazine to a police department or the Department of Emergency Services and Public Protection;

**(3)**  The transfer of a large capacity magazine to a licensed gun dealer in accordance with *section 53-202x*; or

**(4)**  The transfer of a large capacity magazine prior to October 1, 2013, from a licensed gun dealer, pawnbroker licensed under *section 21-40*, or consignment shop operator, as defined in *section 21-39a*, to any person who (A) possessed the large capacity magazine prior to or on April 4, 2013, (B) placed a firearm that such person legally possessed, with the large capacity magazine included or attached, in the possession of such dealer, pawnbroker or operator prior to or on April 4, 2013, pursuant to an agreement between such person and such dealer, pawnbroker or operator for the sale of the firearm to a third person, and (C) is eligible to possess the firearm on the date of such transfer.

**(g)**  The court may order suspension of prosecution in addition to any other diversionary programs available to the defendant, if the court finds that a violation of this section is not of a serious nature and that the person charged with such violation (1) will probably not offend in the future, (2) has not previously been convicted of a violation of this section, and (3) has not previously had a prosecution under this section suspended pursuant to this subsection, it may order suspension of prosecution in accordance with the provisions of subsection (h) of section 29-33, as amended by public act 23-53.

## History

*P.A. 13-3*, § 23, effective April 4, 2013; *P.A. 13-220*, § 1, effective June 18, 2013; *P.A. 23-203*, § 3, effective October 1, 2023.

LexisNexis® Connecticut Annotated Statutes
Copyright © 2023 All rights reserved.

**End of Document**

A-36

## *D.C. Code § 7-2502.01*

The Official Code is current through June 30, 2023

*District of Columbia Official Code > Division I. Government of District. (Titles 1 — 10) > Title 7. Human Health Care and Safety. (Subts. A — L) > Subtitle J. Public Safety. (Chs. 22 — 28B) > Chapter 25. Firearms Control. (§§ 7-2501.01 — 7-2551.03) > Unit A. Firearms Control Regulations. (Subchs. I — X) > Subchapter II. Firearms and Destructive Devices. (§§ 7-2502.01 — 7-2502.16)*

## § 7-2502.01. Registration requirements.

**(a)** Except as otherwise provided in this unit, no person or organization in the District of Columbia ("District") shall receive, possess, control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm. A registration certificate may be issued:

    **(1)** To an organization if:

        **(A)** The organization employs at least 1 commissioned special police officer or employee licensed to carry a firearm whom the organization arms during the employee's duty hours; and

        **(B)** The registration is issued in the name of the organization and in the name of the president or chief executive officer of the organization;

    **(2)** In the discretion of the Chief of Police, to a police officer who has retired from the Metropolitan Police Department;

    **(3)** In the discretion of the Chief of Police, to the Fire Marshal and any member of the Fire and Arson Investigation Unit of the Fire Prevention Bureau of the Fire Department of the District of Columbia, who is designated in writing by the Fire Chief, for the purpose of enforcing the arson and fire safety laws of the District of Columbia;

    **(4)** To a firearms instructor, or to an organization that employs a firearms instructor, for the purpose of conducting firearms training; or

    **(5)** To a person who complies with, and meets the requirements of, this unit.

**(b)** Subsection (a) of this section shall not apply to:

    **(1)**

**(A)**  Qualified law enforcement officers, as that phrase is defined in 18 U.S.C. § 926B(c) and (f), who are carrying the identification required by 18 U.S.C. § 926B(d);

**(B)**  Qualified retired law enforcement officers, as that phrase is defined in 18 U.S.C. §926C(c) and (e)(2), who are carrying the identification required by 18 U.S.C. § 926C(d);

**(C)**  Members of the Army, Navy, Air Force, or Marine Corps of the United States, or of the National Guard or Organized Reserves, when on duty and duly authorized to carry a firearm;

**(D)**  Officers or employees of the United States, when duly authorized to carry a firearm; or

**(E)**  State law enforcement officers who lawfully enter the District of Columbia in hot pursuit of a person suspected of having committed a crime;.

**(2)**  Any person holding a dealer's license; provided, that the firearm or destructive device is:

**(A)**  Acquired by such person in the normal conduct of business;

**(B)**  Kept at the place described in the dealer's license; and

**(C)**  Not kept for such person's private use or protection, or for the protection of his business;

**(3)**  With respect to firearms, any nonresident of the District participating in any lawful recreational firearm-related activity in the District, or on his way to or from such activity in another jurisdiction; provided, that such person, whenever in possession of a firearm, shall upon demand of any member of the Metropolitan Police Department, or other bona fide law enforcement officer, exhibit proof that he is on his way to or from such activity, and that his possession or control of such firearm is lawful in the jurisdiction in which he resides; provided further, that such weapon shall be transported in accordance with *§ 22-4504.02*;

**(4)**  Any person who temporarily possesses a firearm registered to another person while in the home or place of business of the registrant; provided, that the person is not otherwise prohibited from possessing firearms and the person reasonably believes that possession of the firearm is necessary to prevent imminent death or great bodily harm to himself or herself; or

**(5)**  Any person who temporarily possesses a firearm while participating in a firearms training and safety class conducted by a firearms instructor.

**(c)**  For the purposes of subsection (b)(3) of this section, the term "recreational firearm-related activity" includes a firearms training and safety class.

D.C. Code § 7-2502.01

## History

(Sept. 24, 1976, D.C. Law 1-85, title II, § 201,  23 DCR 2464; May 7, 1993, D.C. Law 9-266, § 2(a), *39 DCR 5676*; Mar. 26, 1999, D.C. Law 12-176,§ 5, *45 DCR 5662*; Apr. 20, 1999, D.C. Law 12-264, § 19, *46 DCR 2118*; Mar. 31, 2009, D.C. Law 17-372, § 3(b), *56 DCR 1365*; Sept. 29, 2012, D.C. Law 19-170, § 2(b), *59 DCR 5691*; June 16, 2015, D.C. Law 20-279, § 2(a), *62 DCR 1944*; Apr. 21, 2023, D.C. Law 24-347, § 2(b), *70 DCR 928*.)

District of Columbia Official Code
Copyright © 2023 All rights reserved.

**End of Document**

### *D.C. Code § 7-2502.02*

The Official Code is current through June 30, 2023

*District of Columbia Official Code  >  Division I. Government of District. (Titles 1 — 10)  >  Title 7. Human Health Care and Safety. (Subts. A — L)  >  Subtitle J. Public Safety. (Chs. 22 — 28B)  >  Chapter 25. Firearms Control. (§§ 7-2501.01 — 7-2551.03)  >  Unit A. Firearms Control Regulations. (Subchs. I — X)  >  Subchapter II. Firearms and Destructive Devices. (§§ 7-2502.01 — 7-2502.16)*

## § 7-2502.02. Registration of certain firearms prohibited.

**(a)**  A registration certificate shall not be issued for a:

**(1)**  Sawed-off shotgun;

**(2)**  Machine gun;

**(3)**  Short-barreled rifle;

**(4)**  Pistol not validly registered to the current registrant in the District prior to September 24, 1976, except that the prohibition on registering a pistol shall not apply to:

**(A)**  Any organization that employs at least one commissioned special police officer or other employee licensed to carry a firearm and that arms the employee with a firearm during the employee's duty hours;

**(B)**  A police officer who has retired from the Metropolitan Police Department;

**(C)**  Any person who seeks to register a pistol:

**(i)**  For use in self-defense within that person's home or place of business; or

**(ii)**  As part of the application process for a license to carry a concealed pistol pursuant to *§ 7-2509.02*; or

**(D)**  A firearms instructor, or an organization that employs a firearms instructor, for the purpose of conducting firearms training.

**(5)**  An unsafe firearm prohibited under *§ 7-2505.04*;

**(6)**  An assault weapon;

**(7)**  A .50 BMG rifle; or

**(8)**  Ghost gun.

**(b)** Repealed.

**(c)**

    **(1)** Notwithstanding subsection (a)(5) of this section, a registration certificate may be issued for a self-manufactured firearm that is not prohibited under subsection (a)(1) through (4) or (6) through (8) of this section if:

        **(A)** The applicant meets the requirements of § 7-2502.03; and

        **(B)** A unique serial number is engraved or cast on, or otherwise permanently affixed to, the firearm in a manner that meets or exceeds the requirements imposed on licensed importers and licensed manufacturers of firearms pursuant to 18 U.S.C. § 923(i) and regulations issued pursuant thereto; provided, that a serial number or mark of identification exceeds these requirements if the engraving, casting, or stamping (also known as impressing) of the serial number exceeds the required minimum depth or exceeds the minimum print size of that provision.

    **(2)**

        **(A)** An applicant who meets the requirements of § 7-2502.03 may register a self-manufactured firearm that does not bear a serial number as described in paragraph (1)(B) of this subsection, if, prior to finishing the frame or receiver, the applicant has caused a unique serial number to be engraved, casted, stamped (impressed), or placed on the frame or receiver, as set forth in subparagraphs (B) and (C) of this paragraph.

        **(B)** The serial number shall consist of the first and last name of the self-manufacturer, followed by the designation "DC" and then a set of 2 to 5 numbers.

        **(C)** The set of numbers described in subparagraph (B) of this paragraph shall not duplicate any serial number placed by the self-manufacturer on any other firearm. The applicant shall, before engraving, casting, stamping (impressing), or placing a serial number on the frame or receiver, confirm with the Metropolitan Police Department that the proposed serial number has not already been registered to another firearm.

## History

(Sept. 24, 1976, D.C. Law 1-85, title II, § 202,  23 DCR 2464; Mar. 16, 1978, D.C. Law 2-62, § 2,  24 DCR 5780; May 7, 1993, D.C. Law 9-266, § 2(b),  *39 DCR 5676*; Mar. 31, 2009, D.C. Law 17-372, § 3(c),  *56 DCR 1365*; Sept. 29, 2012, D.C. Law 19-170, § 2(c), *59 DCR 5691*; June 16, 2015, D.C. Law 20-279, § 2(b),  *62 DCR 1944*; Apr. 27, 2021,

D.C. Law 23-274, title II, § 201(b), *68 DCR 1034*; Apr. 21, 2023, D.C. Law 24-347, § 2(c), *70 DCR 928*.)

District of Columbia Official Code
Copyright © 2023 All rights reserved.

---

**End of Document**

*D.C. Code § 7-2502.03*

The Official Code is current through June 30, 2023

*District of Columbia Official Code > Division I. Government of District. (Titles 1 — 10) > Title 7. Human Health Care and Safety. (Subts. A — L) > Subtitle J. Public Safety. (Chs. 22 — 28B) > Chapter 25. Firearms Control. (§§ 7-2501.01 — 7-2551.03) > Unit A. Firearms Control Regulations. (Subchs. I — X) > Subchapter II. Firearms and Destructive Devices. (§§ 7-2502.01 — 7-2502.16)*

## § 7-2502.03. Qualifications for registration; information required for registration.

(a)  No registration certificate shall be issued to any person (and in the case of a person between the ages of 18 and 21, to the person and the person's signatory parent or guardian) or organization unless the Chief determines that such person (or the president or chief executive in the case of an organization):

(1)  Is 21 years of age or older; provided, that the Chief may issue to an applicant between the ages of 18 and 21 years old, and who is otherwise qualified, a registration certificate if the application is accompanied by a notarized statement of the applicant's parent or guardian:

(A)  That the applicant has the permission of the applicant's parent or guardian to own and use the firearm to be registered; and

(B)  The parent or guardian assumes civil liability for all damages resulting from the actions of such applicant in the use of the firearm to be registered; provided further, that such registration certificate shall expire on such person's 21st birthday;

(2)  Has not been convicted of a weapons offense (but not an infraction or misdemeanor violation under *§ 7-2502.08*, *§ 7-2507.02*, *§ 7-2507.06*, or *§ 7-2508.07*) or a felony in this or any other jurisdiction (including a crime punishable by imprisonment for a term exceeding one year);

(3)  Is not under indictment for a crime of violence or a weapons offense;

(4)  Has not been convicted within 5 years prior to the application of any:

(A)  Violation in any jurisdiction of any law restricting the use, possession, or sale of any narcotic or dangerous drug;

(B)  A violation of *§ 22-404*, regarding assaults and threats, or *§ 22-407*, regarding threats to do bodily harm, or a violation of any similar provision of the law of another jurisdiction;

**(C)**  Two or more violations of *§ 50-2201.05(b)*, or, in this or any other jurisdiction, any law restricting driving under the influence of alcohol or drugs;

**(D)**  Intrafamily offense punishable as a misdemeanor, including any similar provision in the law of another jurisdiction;

**(E)**  Misdemeanor violation pursuant to *§ 7-2507.02* or *§ 7-2507.06*;

**(F)**  Violation of *§ 22-3133*; or

**(G)**  Violation of an extreme risk protection order pursuant to *§ 7-2510.11*;

**(5)**  Within the 5-year period immediately preceding the application, has not been acquitted of any criminal charge by reason of insanity or has not been adjudicated a chronic alcoholic by any court; provided, that this paragraph shall not apply if such person shall present to the Chief, with the application, a medical certification indicating that the applicant has recovered from such insanity or alcoholic condition and is capable of safe and responsible possession of a firearm;

**(6)**

**(A)**  Within the 5-year period immediately preceding the application, has not been:

**(i)**  Voluntarily admitted to a mental health facility;

**(ii)**  Involuntarily committed to a mental health facility by the Superior Court of the District of Columbia, another court of competent jurisdiction, the Commission on Mental Health, or a similar commission in another jurisdiction;

**(iii)**  Determined by the Superior Court of the District of Columbia or another court of competent jurisdiction to be an incapacitated individual, as that term is defined in *§ 21-2011*(11);

**(iv)**  Adjudicated as a mental defective, as that term is defined in *27 C.F.R. § 478.11*; or

**(v)**  Committed to a mental institution, as that term is defined in *27 C.F.R. § 478.11*;

**(B)**  Subparagraph (A) of this paragraph shall not apply if:

**(i)**  For applicants disqualified as a result of a voluntary admission, commitment, incapacity determination, or adjudication that occurred in the District, the Superior Court of the District of Columbia has granted the applicant relief pursuant to subsection (f) of this section, unless the

A-44

applicant, since the court granted the applicant relief pursuant to subsection (f) of this section, is again disqualified under subparagraph (A) of this paragraph; and

**(ii)** For applicants disqualified as a result of a voluntary admission, commitment, incapacity determination, or adjudication that occurred in another jurisdiction, the court or commission of competent jurisdiction has granted the applicant relief, unless the applicant, since the court or commission granted the applicant relief, is again disqualified under subparagraph (A) of this paragraph.

**(6A)** Within the 5 years immediately preceding the application, has not had a history of violent behavior;

**(7)** Does not appear to suffer from a physical defect which would tend to indicate that the applicant would not be able to possess and use a firearm safely and responsibly;

**(8)** Has not been adjudicated negligent in a firearm mishap causing death or serious injury to another human being;

**(9)** Is not otherwise ineligible to possess a firearm under *§ 22-4503*;

**(10)** Has not failed to demonstrate satisfactorily, in accordance with a test prescribed by the Chief, a knowledge of the laws of the District of Columbia pertaining to firearms and, in particular, the requirements of this unit, the responsibilities regarding storage, and the requirements for transport; provided, that once this determination is made with respect to a given applicant for a particular firearm, it need not be made again for the same applicant with respect to a subsequent application for a firearm or for the renewal of a registration certificate pursuant to *§ 7-2502.07a*;

**(11)** Is not blind, as defined in *§ 7-1009(1)*;

**(12)**

**(A)** Has not been the respondent in an intrafamily proceeding in which a civil protection order was issued against the applicant pursuant to *§ 16-1005*; provided, that an applicant who has been the subject of such an order shall be eligible for registration if the applicant has submitted to the Chief a certified court record establishing that the order has expired or has been rescinded for a period of 5 years or more; or

**(B)** Has not been the respondent in a proceeding in which a foreign protection order, as that term is defined in *§ 16-1041*, was issued against the applicant; provided, that an applicant who has been the subject of such an order shall be eligible for registration if the applicant has submitted to the

Chief a certified court record establishing that the order has expired or has been rescinded for a period of 5 years;

**(13)**

**(A)** Has completed a firearms training and safety class provided free of charge by the Chief; or

**(B)** Has submitted evidence of any of the following:

**(i)** That the applicant has received firearms training in the United States military;

**(ii)** A license from another state for which firearms training is required, where the training, as determined by the Chief, is equal to or greater than that provided under subparagraph (A) of this paragraph; or

**(iii)** That the applicant has otherwise completed a firearms training or safety course conducted by a firearms instructor that, as determined by the Chief, is equal to or greater than that conducted under subparagraph (A) of this paragraph;

**(14)** Has not been prohibited from possessing or registering a firearm pursuant to *§ 7-2502.08*; and

**(15)** Is not the subject of an ex parte extreme risk protection order issued pursuant to *§ 7-2510.04* or a final extreme risk protection order issued pursuant to *§ 7-2510.03* or renewed pursuant to *§ 7-2510.06*.

**(b)** Every person applying for a registration certificate shall provide on a form prescribed by the Chief:

**(1)** The full name or any other name by which the applicant is known;

**(2)** The present address and each home address where the applicant has resided during the 5-year period immediately preceding the application;

**(3)** The present business or occupation of the applicant and the address and phone number of the employer;

**(4)** The date and place of birth of the applicant;

**(5)** The sex of the applicant;

**(6)** Whether (and if so, the reasons) the District, the United States or the government of any state or subdivision of any state has denied or revoked the applicant's license, registration certificate, or permit pertaining to any firearm;

**(7)** A description of the applicant's role in any mishap involving a firearm, including the date, place, time, circumstances, and the names of the persons injured or killed;

**(8)** Repealed.

**(9)** The caliber, make, model, manufacturer's identification number, serial number, and any other identifying marks on the firearm;

**(10)** For a firearm that is not self-manufactured pursuant to *§ 7-2502.02*, the name and address of the person or organization from whom the firearm was obtained, and in the case of a dealer, his dealer's license number;

**(11)** Where the firearm will generally be kept;

**(12)** Whether the applicant has applied for other registration certificates issued and outstanding;

**(13)** Such other information as the Chief determines is necessary to carry out the provisions of this unit.

**(c)** Every organization applying for a registration certificate shall:

**(1)** With respect to the president or chief executive of such organization, comply with the requirements of subsection (b) of this section; and

**(2)** Provide such other information as the Chief determines is necessary to carry out the provisions of this unit.

**(d)** Repealed.

**(e)** The Chief shall register no more than one pistol per registrant during any 30-day period; provided, that the Chief may permit a person first becoming a District resident to register more than one pistol if those pistols were lawfully owned in another jurisdiction for a period of 6 months prior to the date of the application.

**(f)**

**(1)** A person disqualified under subsection (a)(6)(A) of this section, *18 U.S.C. § 922(d)(4)*, or *18 U.S.C. § 922(g)(4)* as a result of a commitment or adjudication that occurred in the District, may petition the Superior Court for the District of Columbia for relief from disqualification.

**(2)** A petition filed pursuant to paragraph (1) of this subsection shall:

**(A)** Be in writing;

**(B)** State the reason the petitioner was disqualified;

**(C)** State facts in support of the petitioner's claim that the petitioner should no longer be disqualified;

D.C. Code § 7-2502.03

**(D)**  Include a statement, on a form approved by the court, signed by a licensed physician, psychiatrist, or qualified psychologist within the 30-day period immediately preceding the filing of the petition for relief, stating:

**(i)**  The symptoms or behaviors for which the petitioner has been disqualified;

**(ii)**  The length of time that the petitioner has no longer experienced those symptoms or behaviors;

**(iii)**  The length of time that the petitioner has been compliant with any applicable treatment plans related to the reason the petitioner was disqualified; and

**(iv)**  That, in the physician, psychiatrist, or psychologist's opinion, the petitioner would not be likely to act in a manner dangerous to public safety if allowed to register a firearm;

**(E)**  Be accompanied by any appropriate exhibits, affidavits, or supporting documents, including records of any guardianship, conservatorship, or commitment proceeding related to the petitioner's disqualification;

**(F)**  Include 2 statements from individuals who are not related to the petitioner by blood, adoption, guardianship, marriage, domestic partnership, having a child in common, cohabitating, or maintaining a romantic, dating, or sexual relationship and have known the petitioner for at least 3 years. The individuals' statements shall:

**(i)**  Be on a form approved by the court, and signed by the individual within the 30-day period immediately preceding the filing of the petition for relief;

**(ii)**  Describe the petitioner's reputation and character; and

**(iii)**  State that, in the individual's opinion, the petitioner would not be likely to act in a manner dangerous to public safety if allowed to register a firearm; and

**(G)**  Be served upon the Office of the Attorney General.

**(3)**

**(A)**

**(i)**  Upon receipt of a petition filed under paragraph (1) of this subsection, and for good cause shown, the court shall issue such orders as may be necessary to obtain any mental health records and other information relevant for the purposes of the petition. The order shall require the disclosure of records to the Office of the Attorney General so that the

Office of the Attorney General can conduct a search of the petitioner's mental health records and report its findings to the court as required by subparagraph (B) of this paragraph.

**(ii)** The court shall order the Office of the Attorney General to file a response to the petition. Within 60 days after the court's order for a response, the Office of the Attorney General shall file a response indicating whether the Office of the Attorney General supports or opposes the petition.

**(iii)** The court may, for good cause shown, extend in 30-day increments the date by which the Office of Attorney General must file its response under subsubparagraph (ii) of this subparagraph.

**(B)** The Office of Attorney General shall:

**(i)** Conduct a reasonable search of all available records of the petitioner's mental health;

**(ii)** Perform a national criminal history and firearms eligibility background check on the petitioner; and

**(iii)** Include its findings under this subparagraph in its response to the court.

**(C)** The Metropolitan Police Department shall, upon request, provide to the Office of Attorney General any records related to the petitioner it has in its possession or could obtain after conducting a reasonable search.

**(4)**

**(A)** The court shall hold a hearing on a petition filed under paragraph (1) of this subsection within 60 days after the date on which the Office of Attorney General files its response.

**(B)** In determining whether to grant a petition filed pursuant to paragraph (1) of this subsection, the court shall consider all relevant evidence, including:

**(i)** The reason the petitioner was disqualified;

**(ii)** The petitioner's mental health and criminal history records; and

**(iii)** Evidence of the petitioner's reputation.

**(5)** The court shall grant a petition filed pursuant to paragraph (1) of this subsection if the petitioner establishes, by a preponderance of the evidence, that:

**(A)** The petitioner would not be likely to act in a manner dangerous to public safety; and

**(B)**  Granting the relief would not be contrary to the public interest.

**(6)**  If the court grants a petition for relief pursuant to paragraph (5) of this subsection, the court shall issue an order that:

**(A)**  States the petitioner is no longer disqualified under subsection (a)(6)(A) of this section;

**(B)**  Orders the Clerk of the Court to submit a copy of the order to the Metropolitan Police Department, the Office of the Attorney General, and any other relevant law enforcement, pretrial, corrections, or community supervision agency; and

**(C)**  Requires that the petitioner's record be updated in the National Instant Criminal Background Check System and any other system used to determine firearm registration eligibility to reflect that the petitioner is no longer disqualified.

**(7)**  If the court denies a petition for relief, the court shall state the reasons for its denial in writing.

**(8)**  An order granting or denying a petition filed under paragraph (1) of this subsection shall be a final order for the purposes of appeal.

## History

(Sept. 24, 1976, D.C. Law 1-85, title II, § 203,  23 DCR 2464; Mar. 16, 1978, D.C. Law 2-62, § 2,  24 DCR 5780; Mar. 31, 2009, D.C. Law 17-372, § 3(d),  *56 DCR 1365*; June 3, 2011, D.C. Law 18-377, § 2(a),  *58 DCR 1174*; Sept. 29, 2012, D.C. Law 19-170, § 2(d),  *59 DCR 5691*; June 16, 2015, D.C. Law 20-279, § 2(c),  *62 DCR 1944*; May 10, 2019, D.C. Law 22-314, § 2(a),  *66 DCR 1672*; Apr. 27, 2021, D.C. Law 23-274, title I, § 102(a),  *68 DCR 1034*; Apr. 6, 2023, D.C. Law 24-341, title I, § 106,  *69 DCR 14698*; Apr. 21, 2023, D.C. Law 24-347, § 2(d),  *70 DCR 928*.)

District of Columbia Official Code
Copyright © 2023 All rights reserved.

**End of Document**

*D.C. Code § 7-2506.01*

The Official Code is current through June 30, 2023

*District of Columbia Official Code > Division I. Government of District. (Titles 1 — 10) > Title 7. Human Health Care and Safety. (Subts. A — L) > Subtitle J. Public Safety. (Chs. 22 — 28B) > Chapter 25. Firearms Control. (§§ 7-2501.01 — 7-2551.03) > Unit A. Firearms Control Regulations. (Subchs. I — X) > Subchapter VI. Possession of Ammunition. (§ 7-2506.01)*

## § 7-2506.01. Persons permitted to possess ammunition.

(a)  No person shall possess ammunition in the District of Columbia unless:

(1)  He is a licensed dealer pursuant to subchapter IV of this unit;

(2)  He is an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition;

(3)  He is the holder of a valid registration certificate for a firearm pursuant to subchapter II of this chapter; except, that no such person shall possess one or more restricted pistol bullets;

(4)  He holds an ammunition collector's certificate on September 24, 1976; or

(5)  He temporarily possesses ammunition while participating in a firearms training and safety class conducted by a firearms instructor.

(b)  No person in the District shall possess, sell, or transfer any large capacity ammunition feeding device regardless of whether the device is attached to a firearm. For the purposes of this subsection, the term "large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition. The term "large capacity ammunition feeding device" shall not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

## History

(Sept. 24, 1976, D.C. Law 1-85, title VI, § 601,  23 DCR 2464; Mar. 16, 1978, D.C. Law 2-62, § 2,  24 DCR 5780; Aug. 2, 1983, D.C. Law 5-19, § 4,  30 DCR 3328; Mar. 31, 2009, D.C. Law 17-372, § 3(n),  *56 DCR 1365*; Sept. 29, 2012, D.C. Law 19-170, § 2(n), *59 DCR 5691*; Apr. 27, 2013, D.C. Law 19-295, § 2(c),  *60 DCR 2623*.)

District of Columbia Official Code
Copyright © 2023 All rights reserved.

**End of Document**

*D.C. Code § 7-2507.06*

The Official Code is current through June 30, 2023

*District of Columbia Official Code  >  Division I. Government of District. (Titles 1 — 10)  >  Title 7. Human Health Care and Safety. (Subts. A — L)  >  Subtitle J. Public Safety. (Chs. 22 — 28B)  >  Chapter 25. Firearms Control. (§§ 7-2501.01 — 7-2551.03)  >  Unit A. Firearms Control Regulations. (Subchs. I — X)  >  Subchapter VII. Miscellaneous Provisions. (§§ 7-2507.01 — 7-2507.11)*

## § 7-2507.06. Penalties.

**(a)**  Except as provided in *§§ 7-2502.05*, *7-2502.08*, *7-2507.02*, *7-2508.07*, subchapter IX of this chapter [*§ 7-2509.01* et seq.], and  *§ 7-2510.11*, any person convicted of a violation of any provision of this unit shall be fined not more than the amount set forth in *§ 22-3571.01* or imprisoned for not more than 1 year, or both; except that:

**(1)**  A person who knowingly or intentionally sells, transfers, or distributes a firearm, destructive device, or ammunition to a person under 18 years of age shall be fined not more than the amount set forth in *§ 22-3571.01* or imprisoned for not more than 10 years, or both.

**(2)**

**(A)**  Except as provided in subparagraph (B) of this paragraph, any person who is convicted a second time for possessing an unregistered firearm shall be fined not more than the amount set forth in *§ 22-3571.01* or imprisoned not more than 5 years, or both.

**(B)**  A person who in the person's dwelling place, place of business, or on other land possessed by the person, possesses a pistol, or firearm that could otherwise be registered, shall be fined not more than the amount set forth in *§ 22-3571.01* or imprisoned not more than 1 year, or both.

**(3)**

**(A)**  A person convicted of possessing more than one restricted pistol bullet in violation of *§ 7-2506.01(a)*(3) may be sentenced to imprisonment for a term not to exceed 10 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 1 year and shall not be released from prison or granted probation or suspension of sentence prior to serving the mandatory-minimum sentence, and, in addition, may be fined not more than the amount set forth in *§ 22-3571.01*.

A-53

**(B)** A person convicted of possessing a single restricted pistol bullet in violation of *§ 7-2506.01(a)*(3) shall be fined not more than the amount set forth in *§ 22-3571.01* or imprisoned for not more than 1 year, or both.

**(4)** A person convicted of possessing a large capacity ammunition feeding device in violation of *§ 7-2506.01(b)* shall be fined no more than the amount set forth in *§ 22-3571.01*, or incarcerated for no more than 3 years, or both.

**(b)**

**(1)** For the following violations of this unit, the prosecution may, in the operation of its discretion, offer an administrative disposition whereby a person may immediately resolve his or her case upon payment of a fine, in an amount set by the Board of Judges of the Superior Court of the District of Columbia; provided, that the person is not concurrently charged with another criminal offense arising from the same event, other than an offense pursuant to *§ 7-2502.01* or *§ 7-2506.01*:

**(A)** Possession of an unregistered firearm pursuant to *§ 7-2502.01*;

**(B)** Unlawful possession of ammunition (but not possession of more than one restricted pistol bullet) pursuant to *§ 7-2506.01*;

**(C)** Possession of a single restricted pistol bullet pursuant to *§ 7-2507.06(a)*(3)(B); provided, that the person did not also possess a firearm at the time of arrest;

**(D)** Possession of a self-defense spray in violation of *§ 7-2502.13*; and

**(E)** Possession of a stun gun in violation of *§ 7-2502.15*.

**(2)** In determining whether to offer an administrative disposition pursuant to this subsection, the prosecution, in the operation of its discretion, may consider, among other factors, whether at the time of his or her arrest, the person was a resident of the District of Columbia and whether the person had knowledge of *§ 7-2502.01*, *§ 7-2506.01*, or *§ 7-2507.06(a)*(3)(B).

**(3)** An administrative disposition pursuant to this subsection is not a conviction of a crime and shall not be equated to a criminal conviction. The fact that a person resolved a charge through an administrative disposition pursuant to this subsection may not be relied upon by any court of the District of Columbia or any agency of the District of Columbia in any subsequent criminal, civil, or administrative proceeding or administrative action to impose any sanction, penalty, enhanced sentence, or civil disability.

**(4)**  At the time of the prosecution's offer of an administrative disposition, the person may elect to proceed with the criminal case in lieu of an administrative disposition.

**(5)**  The Mayor, pursuant to subchapter I of Chapter 5 of Title 2 [*§ 2-501* et seq.], may issue rules to implement the provisions of this subsection. The rules may provide procedures and criteria to be used in determining when the prosecution, in the operation of its discretion, may offer the option of an administrative disposition pursuant to this subsection.

## History

(Sept. 24, 1976, D.C. Law 1-85, title VII, § 706,  23 DCR 2464; Mar. 5, 1981, D.C. Law 3-147, § 2,  27 DCR 4882; Aug. 20, 1994, D.C. Law 10-151, § 301,  41 DCR 2608; Apr. 24, 2007, D.C. Law 16-306, § 205,  *53 DCR 8610*; Sept. 29, 2012, D.C. Law 19-170, § 2(p), *59 DCR 5691*; Apr. 27, 2013, D.C. Law 19-295, § 2(d),  *60 DCR 2623*; June 16, 2015, D.C. Law 20-279, § 2(e),  *62 DCR 1944*; May 19, 2017, D.C. Law 21-281, § 2(e),  *64 DCR 1648*; May 10, 2019, D.C. Law 22-314, § 2(d),  *66 DCR 1672*.)

District of Columbia Official Code
Copyright © 2023 All rights reserved.

*D.C. Code § 22-3571.01*

The Official Code is current through June 30, 2023

*District of Columbia Official Code > Division IV. Criminal law and procedure and prisoners. (Titles 22 — 24) > Title 22. Criminal Offenses and Penalties. (Subts. I — VII) > Subtitle I. Criminal Offenses. (Chs. 1 — 35B) > Chapter 35B. Fines for Criminal Offenses. (§§ 22-3571.01 — 22-3571.02)*

## § 22-3571.01. Fines for criminal offenses.

**(a)**  Notwithstanding any other provision of the law, and except as provided in *§ 22-3571.02*, a defendant who has been found guilty of an offense under the District of Columbia Official Code punishable by imprisonment may be sentenced to pay a fine as provided in this section.

**(b)**  An individual who has been found guilty of such an offense may be fined not more than the greatest of:

   **(1)**  $100 if the offense is punishable by imprisonment for 10 days or less;

   **(2)**  $250 if the offense is punishable by imprisonment for 30 days, or one month, or less but more than 10 days;

   **(3)**  $500 if the offense is punishable by imprisonment for 90 days, or 3 months, or less but more than 30 days;

   **(4)**  $1,000 if the offense is punishable by imprisonment for 180 days, or 6 months, or less but more than 90 days;

   **(5)**  $2,500 if the offense is punishable by imprisonment for one year or less but more than 180 days;

   **(6)**  $12,500 if the offense is punishable by imprisonment for 5 years or less but more than one year;

   **(7)**  $25,000 if the offense is punishable by imprisonment for 10 years or less but more than 5 years;

   **(8)**  $37,500 if the offense is punishable by imprisonment for 15 years or less but more than 10 years;

   **(9)**  $50,000 if the offense is punishable by imprisonment for 20 years or less but more than 15 years;

   **(10)**  $75,000 if the offense is punishable by imprisonment for 30 years or less but more than 20 years;

**(11)** $125,000 if the offense is punishable by imprisonment for more than 30 years; or

**(12)** $250,000 if the offense resulted in death.

**(c)** An organization that has been found guilty of an offense punishable by imprisonment for 6 months or more may be fined not more than the greatest of:

**(1)** Twice the maximum amount specified in the law setting forth the penalty for the offense;

**(2)** Twice the applicable amount under subsection (b) of this section; or

**(3)** Twice the applicable amount under *§ 22-3571.02(a)*.

## History

(June 11, 2013, D.C. Law 19-317, § 101, *60 DCR 2064*.)

District of Columbia Official Code
Copyright © 2023 All rights reserved.

**End of Document**

## D.C. Code § 22-4506

The Official Code is current through June 30, 2023

*District of Columbia Official Code  >  Division IV. Criminal law and procedure and prisoners. (Titles 22 — 24) > Title 22. Criminal Offenses and Penalties. (Subts. I — VII)  >  Subtitle VI. Regulation and Possession of Weapons. (Ch. 45)  >  Chapter 45. Weapons and Possession of Weapons. (§§ 22-4501 — 22-4517)*

## § 22-4506. Issue of a license to carry a pistol.

**(a)**  The Chief of the Metropolitan Police Department ("Chief") may, upon the application of a person having a bona fide residence or place of business within the District of Columbia, or of a person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his or her person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol concealed upon his or her person within the District of Columbia for not more than 2 years from the date of issue, if it appears that the applicant has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol, and that he or she is a suitable person to be so licensed.

**(b)**  A non-resident who lives in a state that does not require a license to carry a concealed pistol may apply to the Chief for a license to carry a pistol concealed upon his or her person within the District of Columbia for not more than 2 years from the date of issue; provided, that he or she meets the same reasons and requirements set forth in subsection (a) of this section.

**(c)**  For any person issued a license pursuant to this section, or renewed pursuant to *§ 7-2509.03*, the Chief may limit the geographic area, circumstances, or times of the day, week, month, or year in which the license is effective, and may subsequently limit, suspend, or revoke the license as provided under *§ 7-2509.05*.

**(d)**  The application for a license to carry shall be on a form prescribed by the Chief and shall bear the name, address, description, photograph, and signature of the licensee.

**(e)**  Except as provided in *§ 7-2509.05(b)*, any person whose application has been denied or whose license has been limited or revoked may, within 15 days after the date of the notice of denial or notice of intent, appeal to the Concealed Pistol Licensing Review Board established pursuant to *§ 7-2509.08*.

**History**

D.C. Code § 22-4506

(July 8, 1932, *47 Stat. 651*, ch. 465, § 6; May 21, 1994, D.C. Law 10-119, § 15(e), 41 DCR 1639; May 20, 2009, D.C. Law 17-388, § 2(f), *56 DCR 1162*; June 16, 2015, D.C. Law 20-279, § 3(b), *62 DCR 1944*.)

District of Columbia Official Code
Copyright © 2023 All rights reserved.

---

**End of Document**

## HRS § 134-8

This document is current through 2023 Legislative Session. Subject to changes by Revisor pursuant to HRS 23G-15.

*Michie's™ Hawaii Revised Statutes Annotated > Division 1. Government (Titles 1 — 21) > Title 10 Public Safety and Internal Security (Chs. 121 — 138) > Chapter 134 Firearms, Ammunition and Dangerous Weapons (Pts. I — V) > Part I. General Regulations (§§ 134-1 — 134-29)*

## § 134-8. Ownership, etc., of automatic firearms, silencers, etc., prohibited; penalties.

**(a)** The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by *section 134-4(e)*; automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshells, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or any other similar coating designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

**(b)** Any person who installs, removes, or alters a firearm part with the intent to convert the firearm to an automatic firearm shall be deemed to have manufactured an automatic firearm in violation of subsection (a).

**(c)** The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.

**(d)** Any person violating subsection (a) or (b) shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony.

**History**

L 1988, c 275, § 2; am *L 1989, c 261*, § 6; am *L 1989, c 263*, § 4; am *L 1992, c 286*, § 3; am *L 1992, c 286*, §§ 3, 4.

Michie's™ Hawaii Revised Statutes Annotated
Copyright © 2023 All rights reserved.

---

**End of Document**

*ALM GL ch. 140, § 121*

Current through Chapter 25 of the 2023 Legislative Session of the 193rd General Court

*Annotated Laws of Massachusetts  >  PART I ADMINISTRATION OF THE GOVERNMENT (Chs. 1 - 182) > TITLE XX PUBLIC SAFETY AND GOOD ORDER (Chs. 133 - 148A)  >  TITLE XX PUBLIC SAFETY AND GOOD ORDER (Chs. 133 — 148A)  >  Chapter 140 Licenses (§§ 1 — 206)*

## § 121. Firearms — Definitions; Licensing Authority;  Exceptions.

As used in sections 122 to 131Y, inclusive, the following words shall, unless the context clearly requires otherwise, have the following meanings:—

"Ammunition", cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun. The term "ammunition" shall also mean tear gas cartridges.

"Assault weapon", shall have the same meaning as a semiautomatic assault weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, *18 U.S.C. section 921(a)(30)* as appearing in such section on September 13, 1994, and shall include, but not be limited to, any of the weapons, or copies or duplicates of the weapons, of any caliber, known as: (i) Avtomat Kalashnikov (AK) (all models); (ii) Action Arms Israeli Military Industries UZI and Galil; (iii) Beretta Ar70 (SC-70); (iv) Colt AR-15; (v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M-10, M-11, M-11/9 and M-12; (vi) Steyr AUG; (vii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and (viii) revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12; provided, however, that the term assault weapon shall not include: (i) any of the weapons, or replicas or duplicates of such weapons, specified in appendix A to *18 U.S.C. section 922* as appearing in such appendix on September 13, 1994, as such weapons were manufactured on October 1, 1993; (ii) any weapon that is operated by manual bolt, pump, lever or slide action; (iii) any weapon that has been rendered permanently inoperable or otherwise rendered permanently unable to be designated a semiautomatic assault weapon; (iv) any weapon that was manufactured prior to the year 1899; (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable assault weapon; (vi) any semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition; or (vii) any semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine.

"Bump stock", any device for a weapon that increases the rate of fire achievable with such weapon by using energy from the recoil of the weapon to generate a reciprocating action that facilitates repeated activation of the trigger.

"Conviction", a finding or verdict of guilt or a plea of guilty, whether or not final sentence is imposed.

"Court", as used in sections 131R to 131Y, inclusive, the division of the district court department or the Boston municipal court department of the trial court having jurisdiction in the city or town in which the respondent resides.

"Deceptive weapon device", any device that is intended to convey the presence of a rifle, shotgun or firearm that is used in the commission of a violent crime, as defined in this section, and which presents an objective threat of immediate death or serious bodily harm to a person of reasonable and average sensibility.

"Extreme risk protection order", an order by the court ordering the immediate suspension and surrender of any license to carry firearms or firearm identification card which the respondent may hold and ordering the respondent to surrender all firearms, rifles, shotguns, machine guns, weapons or ammunition which the respondent then controls, owns or possesses; provided, however, that an extreme risk protection order shall be in effect for up to 1 year from the date of issuance and may be renewed upon petition.

"Family or household member", a person who: (i) is or was married to the respondent; (ii) is or was residing with the respondent in the same household; (iii) is or was related by blood or marriage to the respondent; (iv) has or is having a child in common with the respondent, regardless of whether they have ever married or lived together; (v) is or has been in a substantive dating relationship with the respondent; or (vi) is or has been engaged to the respondent.

"Firearm", a stun gun or a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm shall not include any weapon that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk-through metal detectors.

"Gunsmith", any person who engages in the business of repairing, altering, cleaning, polishing, engraving, blueing or performing any mechanical operation on any firearm, rifle, shotgun or machine gun.

"Imitation firearm", any weapon which is designed, manufactured or altered in such a way as to render it incapable of discharging a shot or bullet.

"Large capacity feeding device", (i) a fixed or detachable magazine, box, drum, feed strip or similar device capable of accepting, or that can be readily converted to accept, more than ten rounds of ammunition or more than five shotgun shells; or (ii) a large capacity ammunition feeding device as defined in the federal Public Safety and Recreational Firearms Use Protection Act, *18 U.S.C. section 921(a)(31)* as appearing in such section on September 13, 1994. The term "large capacity feeding device" shall not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber ammunition.

"Large capacity weapon", any firearm, rifle or shotgun: (i) that is semiautomatic with a fixed large capacity feeding device; (ii) that is semiautomatic and capable of accepting, or readily modifiable to accept, any detachable large capacity feeding device; (iii) that employs a rotating cylinder capable of accepting more than ten rounds of ammunition in a rifle or firearm and more than five shotgun shells in the case of a shotgun or firearm; or (iv) that is an assault weapon. The term "large capacity weapon" shall be a secondary designation and shall apply to a weapon in addition to its primary designation as a firearm, rifle or shotgun and shall not include: (i) any weapon that was manufactured in or prior to the year 1899; (ii) any weapon that operates by manual bolt, pump, lever or slide action; (iii) any weapon that is a single-shot weapon; (iv) any weapon that has been modified so as to render it permanently inoperable or otherwise rendered permanently unable to be designated a large capacity weapon; or (v) any weapon that is an antique or relic, theatrical prop or other weapon that is not capable of firing a projectile and which is not intended for use as a functional weapon and cannot be readily modified through a combination of available parts into an operable large capacity weapon.

"Length of barrel" or "barrel length", that portion of a firearm, rifle, shotgun or machine gun through which a shot or bullet is driven, guided or stabilized and shall include the chamber.

"Licensing authority", the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them.

"Machine gun", a weapon of any description, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged by one continuous activation of the trigger, including a submachine gun; provided, however, that "machine gun" shall include bump stocks and trigger cranks.

"Petition", a request filed with the court by a petitioner for the issuance or renewal of an extreme risk protection order.

"Petitioner", the family or household member, or the licensing authority of the municipality where the respondent resides, filing a petition.

"Purchase" and "sale" shall include exchange; the word "purchaser" shall include exchanger; and the verbs "sell" and "purchase", in their different forms and tenses, shall include the verb exchange in its appropriate form and tense.

"Respondent", the person identified as the respondent in a petition against whom an extreme risk protection order is sought.

"Rifle", a weapon having a rifled bore with a barrel length equal to or greater than 16 inches and capable of discharging a shot or bullet for each pull of the trigger.

"Sawed-off shotgun", any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon as modified has one or more barrels less than 18 inches in length or as modified has an overall length of less than 26 inches.

"Semiautomatic", capable of utilizing a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and requiring a separate pull of the trigger to fire each cartridge.

"Shotgun", a weapon having a smooth bore with a barrel length equal to or greater than 18 inches with an overall length equal to or greater than 26 inches, and capable of discharging a shot or bullet for each pull of the trigger.

"Stun gun", a portable device or weapon, regardless of whether it passes an electrical shock by means of a dart or projectile via a wire lead, from which an electrical current, impulse, wave or beam that is designed to incapacitate temporarily, injure or kill may be directed.

"Substantive dating relationship", a relationship as determined by the court after consideration of the following factors: (i) the length of time of the relationship; (ii) the type of relationship; (iii) the frequency of interaction between the parties; and (iv) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship.

"Trigger crank", any device to be attached to a weapon that repeatedly activates the trigger of the weapon through the use of a lever or other part that is turned in a circular motion; provided, however, that "trigger crank" shall not include any weapon initially designed and manufactured to fire through the use of a crank or lever.

"Violent crime", shall mean any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such term if committed by an adult, that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another.

"Weapon", any rifle, shotgun or firearm.

Where the local licensing authority has the power to issue licenses or cards under this chapter, but no such licensing authority exists, any resident or applicant may apply for such license or firearm identification card directly to the colonel of state police and said colonel shall for this purpose be the licensing authority.

The provisions of sections 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to:

**(A)** any firearm, rifle or shotgun manufactured in or prior to the year 1899;

**(B)** any replica of any firearm, rifle or shotgun described in clause (A) if such replica: (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition; or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade; and

**(C)** manufacturers or wholesalers of firearms, rifles, shotguns or machine guns.

## History

1911, 495, §§ 1, 11; 1922, 485, § 1; 1927, 326, § 1; 1934, 359, § 1; 1957, 688, § 4; 1959, 296, § 1; 1960, 186; 1968, 737, § 1; 1969, 799, § 1; 1971, 456, § 1; 1973, 892, § 1; 1983, 516, § 1; 1984, 116, § 1; 1989, 433; *1990, 511, § 1*; *1996, 151, §§ 300, 301*; *1998, 180, § 8*; *1999, 1, § 1*; *2004, 150, §§ 1-3*; *2014, 284, §§ 19-21*; *2017, 110, §§ 18-20*, effective November 3, 2017; *2018, 123, §§ 1-7*, effective August 17, 2018.

Annotated Laws of Massachusetts
Copyright © 2023 All rights reserved.

## *ALM GL ch. 140, § 131*

Current through Chapter 25 of the 2023 Legislative Session of the 193rd General Court

*Annotated Laws of Massachusetts  >  PART I ADMINISTRATION OF THE GOVERNMENT (Chs. 1 - 182)  >  TITLE XX PUBLIC SAFETY AND GOOD ORDER (Chs. 133 - 148A)  >  TITLE XX PUBLIC SAFETY AND GOOD ORDER (Chs. 133 — 148A)  >  Chapter 140 Licenses (§§ 1 — 206)*

## § 131. Firearms — Possession — License to Carry.

The issuance and possession of a license to carry firearms shall be subject to the following conditions and restrictions:

**(a)**  A license shall entitle a holder thereof of a license to purchase, rent, lease, borrow, possess and carry: (i) firearms, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes; and (ii) rifles and shotguns, including large capacity weapons, and feeding devices and ammunition therefor, for all lawful purposes.

**(b)**  The colonel of state police may, after an investigation, grant a license to a club or facility with an on-site shooting range or gallery, which club is incorporated under the laws of the commonwealth for the possession, storage and use of large capacity weapons, ammunition therefor and large capacity feeding devices for use with such weapons on the premises of the club; provided, however, that not less than 1 shareholder of the club shall be qualified and suitable to be issued a license; and provided further, that such large capacity weapons and ammunition feeding devices may be used under the club license only by a member that possesses a valid firearm identification card issued pursuant to section 129B or a valid license to carry firearms, or by such other person that the club permits while under the direct supervision of a certified firearms safety instructor or club member who, in the case of a large capacity firearm, possesses a valid license to carry firearms or, in the case of a large capacity rifle or shotgun, possesses a valid license to carry firearms. The club shall not permit shooting at targets that depict human figures, human effigies, human silhouettes or any human images thereof, except by public safety personnel performing in line with their official duties.

No large capacity weapon or large capacity feeding device shall be removed from the premises except to: (i) transfer the firearm or feeding device to a licensed dealer; (ii) transport the firearm or feeding device to a licensed gunsmith for repair; (iii) target, trap or skeet shoot on the premises of another

club incorporated under the laws of the commonwealth and to transport thereto; (iv) attend an exhibition or educational project or event that is sponsored by, conducted under the supervision of or approved by a public law enforcement agency or a nationally or state recognized entity that promotes proficiency in or education about semiautomatic weapons and to transport thereto and therefrom; (v) hunt pursuant to chapter 131; or (vi) surrender the firearm or feeding device pursuant to section 129D. Any large capacity weapon or large capacity feeding device kept on the premises of a lawfully incorporated shooting club shall, when not in use, be secured in a locked container and shall be unloaded during any lawful transport. The clerk or other corporate officer of the club shall annually file a report with the colonel of state police and the commissioner of the department of criminal justice information services listing all large capacity weapons and large capacity feeding devices owned or possessed under the license. The colonel or a designee may inspect all firearms owned or possessed by the club upon request during regular business hours and the colonel may revoke or suspend a club license for a violation of this chapter or chapter 269 relative to the ownership, use or possession of large capacity weapons or large capacity feeding devices.

**(c)**  A license to carry firearms shall be valid to own, possess, purchase and transfer non-large capacity rifles and shotguns, consistent with the entitlements conferred by a firearm identification card issued under section 129B.

**(d)**  A person residing or having a place of business within the jurisdiction of the licensing authority or any law enforcement officer employed by the licensing authority or any person residing in an area of exclusive federal jurisdiction located within a city or town may submit to the licensing authority or the colonel of state police an application for a license to carry firearms, or renewal of the same, which the licensing authority or the colonel shall issue if it appears that the applicant is neither a prohibited person nor determined to be unsuitable to be issued a license as set forth in this section, provided that upon an initial application for a license to carry firearms, the licensing authority shall conduct a personal interview with the applicant.

A prohibited person shall be a person who:

**(i)**  has, in a court of the commonwealth, been convicted or adjudicated a youthful offender or delinquent child, both as defined in *section 52 of chapter 119*, for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment for more than 2 years; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or

transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in *section 1 of chapter 94C* including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in *18 U.S.C. 921(a)(33)*;

(ii)  has, in any other state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment for more than 2 years; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in said *section 1 of said chapter 94C* including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in *18 U.S.C. 921(a)(33)*;

(iii)  is or has been (A) committed to a hospital or institution for mental illness, alcohol or substance abuse, except a commitment pursuant to *sections 35* or *36C of chapter 123*, unless after 5 years from the date of the confinement, the applicant submits with the application an affidavit of a licensed physician or clinical psychologist attesting that such physician or psychologist is familiar with the applicant's mental illness, alcohol or substance abuse and that in the physician's or psychologist's opinion, the applicant is not disabled by a mental illness, alcohol or substance abuse in a manner that shall prevent the applicant from possessing a firearm, rifle or shotgun; (B) committed by a court order to a hospital or institution for mental illness, unless the applicant was granted a petition for relief of the court order pursuant to said *section 36C of said chapter 123* and submits a copy of the court order with the application; (C) subject to an order of the probate court appointing a guardian or conservator for a incapacitated person on the grounds that the applicant lacks the mental capacity to contract or manage the applicant's affairs, unless the applicant was granted a petition for relief of the order of the probate court pursuant to *section 56C of chapter 215* and submits a copy of the order of the probate court with the application; or (D) found to be a person with an alcohol use disorder or substance use disorder or both and committed pursuant to said *section 35 of said chapter 123*, unless the applicant was granted a petition

for relief of the court order pursuant to said section 35 and submits a copy of the court order with the application;

**(iv)** is younger than 21 years of age at the time of the application;

**(v)** is an alien who does not maintain lawful permanent residency;

**(vi)** is currently subject to: (A) an order for suspension or surrender issued pursuant to *sections 3B* or *3C of chapter 209A* or a similar order issued by another jurisdiction; (B) a permanent or temporary protection order issued pursuant to said chapter 209A or a similar order issued by another jurisdiction, including any order described in *18 U.S.C. 922(g)(8)*; (C) a permanent or temporary harassment prevention order issued pursuant to chapter 258E or a similar order issued by another jurisdiction; or (D) an extreme risk protection order issued pursuant to sections 131R to 131X, inclusive, or a similar order issued by another jurisdiction;

**(vii)** is currently the subject of an outstanding arrest warrant in any state or federal jurisdiction;

**(viii)** has been discharged from the armed forces of the United States under dishonorable conditions;

**(ix)** is a fugitive from justice; or

**(x)** having been a citizen of the United States, has renounced that citizenship.

The licensing authority shall deny the application or renewal of a license to carry, or suspend or revoke a license issued under this section if the applicant or licensee is unsuitable to be issued or to continue to hold a license to carry. A determination of unsuitability shall be based on reliable, articulable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety or a risk of danger to self or others. Upon denial of an application or renewal of a license based on a determination of unsuitability, the licensing authority shall notify the applicant in writing setting forth the specific reasons for the determination in accordance with paragraph (e). Upon revoking or suspending a license based on a determination of unsuitability, the licensing authority shall notify the holder of a license in writing setting forth the specific reasons for the determination in accordance with paragraph (f). The determination of unsuitability shall be subject to judicial review under said paragraph (f).

**(e)**  Within seven days of the receipt of a completed application for a license to carry or possess firearms, or renewal of same, the licensing authority shall forward one copy of the application and one copy of the applicant's fingerprints to the colonel of state police, who shall within 30 days advise the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth and whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons from possessing a license to carry or possess firearms. In searching for any disqualifying history of the applicant, the colonel shall utilize, or cause to be utilized, files maintained by the department of probation and statewide and nationwide criminal justice, warrant and protection order information systems and files including, but not limited to, the National Instant Criminal Background Check System. The colonel shall inquire of the commissioner of the department of mental health relative to whether the applicant is disqualified from being so licensed. If the information available to the colonel does not indicate that the possession of a firearm or large capacity firearm by the applicant would be in violation of state or federal law, he shall certify such fact, in writing, to the licensing authority within said 30 day period.

The licensing authority may also make inquiries concerning the applicant to: (i) the commissioner of the department of criminal justice information services relative to any disqualifying condition and records of purchases, sales, rentals, leases and transfers of weapons or ammunition concerning the applicant; (ii) the commissioner of probation relative to any record contained within the department of probation or the statewide domestic violence record keeping system concerning the applicant; and (iii) the commissioner of the department of mental health relative to whether the applicant is a suitable person to possess firearms or is not a suitable person to possess firearms. The director or commissioner to whom the licensing authority makes such inquiry shall provide prompt and full cooperation for that purpose in any investigation of the applicant.

The licensing authority shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing; provided, however, that no such license shall be issued unless the colonel has certified, in writing, that the information available to him does not indicate that the possession of a firearm or large capacity firearm by the applicant would be in violation of state or federal law.

The licensing authority shall provide to the applicant a receipt indicating that it received the application. The receipt shall be provided to the applicant

within 7 days by mail if the application was received by mail or immediately if the application was made in person; provided, however, that the receipt shall include the applicant's name and address; current license number and license expiration date, if any; the date the licensing authority received the application; the name, address and telephone number of the licensing authority; the agent of the licensing authority that received the application; the type of application; and whether the application is for a new license or a renewal of an existing license. The licensing authority shall keep a copy of the receipt for not less than 1 year and shall furnish a copy to the applicant if requested by the applicant.

**(f)**  A license issued under this section shall be revoked or suspended by the licensing authority, or his designee, upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed. A license shall be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license. Any revocation or suspension of a license shall be in writing and shall state the reasons therefor. Upon revocation or suspension, the licensing authority shall take possession of such license and the person whose license is so revoked or suspended shall take all actions required under the provisions of section 129D. No appeal or post-judgment motion shall operate to stay such revocation or suspension. Notices of revocation and suspension shall be forwarded to the commissioner of the department of criminal justice information services and the commissioner of probation and shall be included in the criminal justice information system. A revoked or suspended license may be reinstated only upon the termination of all disqualifying conditions, if any.

Any applicant or holder aggrieved by a denial, revocation or suspension of  a license, unless a hearing has previously been held pursuant to chapter 209A, may, within either 90 days after receiving notice of the denial, revocation or suspension or within 90 days after the expiration of the time limit during which the licensing authority shall respond to the applicant, file a petition to obtain judicial review in the district court having jurisdiction in the city or town in which the applicant filed the application or in which the license was issued. If after a hearing a justice of the court finds that there was no reasonable ground for denying, suspending or revoking the license and that the petitioner is not prohibited by law from possessing a license, the justice may order a license to be issued or reinstated to the petitioner.

**(g)**  A license shall be in a standard form provided by the commissioner of the department of criminal justice information services in a size and shape equivalent to that of a license to operate motor vehicles issued by the registry of motor

vehicles pursuant to *section 8 of chapter 90* and shall contain a license number which shall clearly indicate the name, address, photograph, fingerprint, place and date of birth, height, weight, hair color, eye color and signature of the licensee. The license shall be clearly marked "License to Carry Firearms". The license shall provide in a legible font size and style the phone numbers for the National Suicide Prevention Lifeline and the Samaritans Statewide Helpline. The application for such license shall be made in a standard form provided by the commissioner of the department of criminal justice information services, which form shall require the applicant to affirmatively state under the pains and penalties of perjury that such applicant is not disqualified on any of the grounds enumerated above from being issued such license.

**(h)** Any person who knowingly files an application containing false information shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than six months nor more than two years in a house of correction, or by both such fine and imprisonment.

**(i)** A license to carry or possess firearms shall be valid, unless revoked or suspended, for a period of not more than 6 years from the date of issue and shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years nor more than 6 years from the date of issue; provided, however, that, if the licensee applied for renewal before the license expired, the license shall remain valid after its expiration date for all lawful purposes until the application for renewal is approved or denied. If a licensee is on active duty with the armed forces of the United States on the expiration date of the license, the license shall remain valid until the licensee is released from active duty and for a period not less than 180 days following the release; provided, however, that, if the licensee applied for renewal prior to the end of that period, the license shall remain valid after its expiration date for all lawful purposes until the application for renewal is approved or denied. Any renewal thereof shall expire on the anniversary of the licensee's date of birth occurring not less than 5 years but not more than 6 years from the effective date of such license. Any license issued to an applicant born on February 29 shall expire on March 1. The fee for the application shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $25 of the fee; $50 of the fee shall be deposited into the general fund of the commonwealth and not less than $50,000 of the funds deposited into the General Fund shall be allocated to the Firearm Licensing Review Board, established in section 130B, for its operations and that any funds not expended by said board for its operations shall revert back to the General Fund; and $25 of the fee shall be deposited in the Firearms Fingerprint Identity Verification Trust Fund. For

active and retired law enforcement officials, or local, state, or federal government entities acting on their behalf, the fee for the application shall be set at $25, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $12.50 of the fee, and $12.50 of the fee shall be deposited into the general fund of the commonwealth. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit such portion of the license application fee into the Firearms Record Keeping Fund quarterly, not later than January 1, April 1, July 1 and October 1 of each year. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit quarterly such portion of the license application fee as is to be deposited into the General Fund, not later than January 1, April 1, July 1 and October 1 of each year. For the purposes of *section 10 of chapter 269*, an expired license to carry firearms shall be deemed to be valid for a period not to exceed 90 days beyond the stated date of expiration, unless such license to carry firearms has been revoked.

Any person over the age of 70 and any law enforcement officer applying for a license to carry firearms through his employing agency shall be exempt from the requirement of paying a renewal fee for a license to carry.

**(j)**

**(1)** No license shall be required for the carrying or possession of a firearm known as a detonator and commonly used on vehicles as a signaling and marking device, when carried or possessed for such signaling or marking purposes.

**(2)** No license to carry shall be required for the possession of an unloaded large capacity rifle or shotgun or an unloaded feeding device therefor by a veteran's organization chartered by the Congress of the United States, chartered by the commonwealth or recognized as a nonprofit tax-exempt organization by the Internal Revenue Service, or by the members of any such organization when on official parade duty or during ceremonial occasions. For purposes of this subparagraph, an "unloaded large capacity rifle or shotgun" and an "unloaded feeding device therefor" shall include any large capacity rifle, shotgun or feeding device therefor loaded with a blank cartridge or blank cartridges, so-called, which contain no projectile within such blank or blanks or within the bore or chamber of such large capacity rifle or shotgun.

**(k)** Whoever knowingly issues a license in violation of this section shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than six months nor more than two years in a jail or house of correction, or by both such fine and imprisonment.

**(l)**  The commissioner of the department of criminal justice information services shall send electronically or by first class mail to the holder of each such license to carry firearms, a notice of the expiration of such license not less than 90 days prior to such expiration and shall enclose therein a form for the renewal of such license. The form for renewal shall include an affidavit in which the applicant shall verify that the applicant has not lost any firearms or had any firearms stolen from the applicant since the date of the applicant's last renewal or issuance. The taking of fingerprints shall not be required in issuing the renewal of a license if the renewal applicant's fingerprints are on file with the department of the state police. Any licensee shall notify, in writing, the licensing authority who issued said license, the chief of police into whose jurisdiction the licensee moves and the commissioner of the department of criminal justice information services of any change of address. Such notification shall be made by certified mail within 30 days of its occurrence. Failure to so notify shall be cause for revocation or suspension of said license. The commissioner of the department of criminal justice information services shall provide electronic notice of expiration only upon the request of a cardholder. A request for electronic notice of expiration shall be forwarded to the department on a form furnished by the commissioner. Any electronic address maintained by the department for the purpose of providing electronic notice of expiration shall be considered a firearms record and shall not be disclosed except as provided in *section 10 of chapter 66*.

**(m)**  Notwithstanding the provisions of *section 10 of chapter 269*, any person in possession of a firearm, rifle or shotgun whose license issued under this section is invalid for the sole reason that it has expired, not including licenses that remain valid under paragraph (i) because the licensee applied for renewal before the license expired, but who shall not be disqualified from renewal upon application therefor pursuant to this section, shall be subject to a civil fine of not less than $100 nor more than $5,000 and the provisions of *section 10 of chapter 269* shall not apply; provided, however, that the exemption from the provisions of said *section 10 of said chapter 269* provided herein shall not apply if: (i) such license has been revoked or suspended, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; (ii) revocation or suspension of such license is pending, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; or (iii) an application for renewal of such license has been denied. Any law enforcement officer who discovers a person to be in possession of a firearm, rifle or shotgun after such person's license has expired, meaning after 90 days beyond the stated expiration date on the license, has been revoked or suspended, solely for failure to give notice of a change of address, shall confiscate such firearm, rifle or shotgun and the expired or suspended

license then in possession and such officer, shall forward such license to the licensing authority by whom it was issued as soon as practicable. The officer shall, at the time of confiscation, provide to the person whose firearm, rifle or shotgun has been confiscated, a written inventory and receipt for all firearms, rifles or shotguns confiscated and the officer and his employer shall exercise due care in the handling, holding and storage of these items. Any confiscated weapon shall be returned to the owner upon the renewal or reinstatement of such expired or suspended license within one year of such confiscation or may be otherwise disposed of in accordance with the provisions of section 129D. The provisions of this paragraph shall not apply if such person has a valid license to carry firearms issued under section 131F.

**(n)** Upon issuance of a license to carry or possess firearms under this section, the licensing authority shall forward a copy of such approved application and license to the commissioner of the department of criminal justice information services, who shall inform the licensing authority forthwith of the existence of any disqualifying condition discovered or occurring subsequent to the issuance of a license under this section.

**(o)** No person shall be issued a license to carry or possess a machine gun in the commonwealth, except that a licensing authority or the colonel of state police may issue a machine gun license to:

    **(i)** a firearm instructor certified by the municipal police training committee for the sole purpose of firearm instruction to police personnel;

    **(ii)** a bona fide collector of firearms upon application or upon application for renewal of such license.

    Clauses (i) and (ii) of this paragraph shall not apply to bump stocks and trigger cranks.

**(p)** The commissioner of the department of criminal justice information services shall promulgate regulations in accordance with chapter 30A to establish criteria for persons who shall be classified as bona fide collectors of firearms.

**(q)** Nothing in this section shall authorize the purchase, possession or transfer of any weapon, ammunition or feeding device that is, or in such manner that is, prohibited by state or federal law.

**(r)** The secretary of the executive office of public safety or his designee may promulgate regulations to carry out the purposes of this section.

## History

1906, 172, § 1; 1911, 548, § 1; 1919, 207, § 1; 1922, 485, § 9; 1925, 284, § 4; 1927, 326, § 3; 1936, 302; 1951, 201; 1953, 319, § 20; 1953, 454; 1957, 688, § 15; 1959, 296, § 6; 1960, 293; 1969, 799, § 11; 1972, 415; 1973, 138; 1973, 892, § 7; 1974, 312; 1974, 649, § 1; 1975, 4, § 1; 1975, 113, § 1; 1984, 420, § 2; 1986, 481, § 2; 1987, 465, § 33; *1994, 24, § 3*; *1996, 151, §§ 325-329*; *1996, 200, § 28*; *1998, 180, § 41*; *1998, 358, §§ 6-9*; *2002, 196, § 22*; *2002, 513, § 2*; *2003, 26, § 429*; *2003, 46, § 103*; *2004, 150, §§ 10-16*; *2008, 224*; *2010, 256, § 97*; *2010, 466, § 3*; *2011, 9, §§ 16, 17*; *2014, 284, §§ 46-57*; *2017, 110, § 21*, effective February 1, 2018; *2018, 123, §§ 11, 12*, effective August 17, 2018; *2022, 175, §§ 4-17A*, effective August 10, 2022.

Annotated Laws of Massachusetts
Copyright © 2023 All rights reserved.

---

**End of Document**

# PUBLIC ACTS

OF

# THE LEGISLATURE

OF THE

## STATE OF MICHIGAN

PASSED AT THE

## REGULAR SESSION OF 1927

**CONTAINING JOINT RESOLUTIONS AND AMENDMENTS
TO THE CONSTITUTION**



COMPILED BY

### JOHN S. HAGGERTY

**SECRETARY OF STATE**

LANSING, MICHIGAN.
ROBERT SMITH CO., STATE PRINTERS,
1927.

other purpose. Such persons shall hold office during the term of their employment by the state highway department but the authority herein vested shall cease upon the termination of such employment. The persons so appointed shall by reason of such appointment be members of the department of public safety during the terms of such appointment but shall serve without pay as members thereof.

Approved June 2, 1927.

---

## [No. 372.]

AN ACT to regulate and license the selling, purchasing, possessing and carrying of certain firearms; to prohibit the buying, selling or carrying of certain firearms without a license therefor; to prohibit the possession of certain weapons and attachments; to prohibit the pawning of certain firearms; to prohibit the sale, offering for sale, or possession for the purpose of sale of written or printed matter containing any offer to sell or deliver certain firearms or devices within this state; to provide penalties for the violations of this act, and to repeal act number two hundred seventy-four of the public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen.

*The People of the State of Michigan enact:*

SECTION 1. The word "pistol" as used in this act shall mean any firearm, loaded or unloaded, thirty inches or less in length. The word "purchaser" shall mean any person who receives a pistol from another by purchase, gift or loan. The word "seller" shall mean any person who sells, furnishes, loans or gives a pistol to another. *(Words defined.)*

SEC. 2. No person shall purchase a pistol as defined in this act without first having obtained a license therefor as *(License before purchase.)*

prescribed herein. The commissioner or chief of police, or his duly authorized deputy, in incorporated cities or in incorporated villages having an organized department of police, and the sheriff, or his authorized deputy, in parts of the respective counties not included within incorporated cities or villages, are hereby authorized to issue licenses to purchase pistols to applicants residing within the respective territories **To whom granted.** herein mentioned. No such license shall be granted to any person except he be nineteen years of age or over, and has resided in this state six months or more, and in no event shall such a license be issued to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. Applications for such licenses shall be signed by the applicant under oath upon forms provided by the commissioner of public safety. Licenses to purchase pistols shall **Executed in duplicate.** be executed in duplicate upon forms provided by the commissioner of public safety and shall be signed by the licensing authority. One copy of such license shall be delivered to the applicant and the duplicate of such license shall be retained by such licensing authority as a permanent official record for a period of six years. Such license shall be void unless used within ten days after the date of its issue. Any person who **Misdemeanor; penalty.** shall sell to another any pistol as defined in this act without complying with the requirements of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail not more than ninety days, or both such fine and imprisonment in the discretion of the court. Such license shall be signed in ink by the holder thereof in the presence of the person selling, loaning or giving a pistol to such licensee and shall thereupon be taken up by such person, signed by him in ink and shall be delivered or sent by registered mail within forty-eight hours to the commissioner of public safety. The seller shall certify upon said license in the space provided therefor the name of the person to whom such pistol was delivered, the make, style, calibre and number of such pistol, and shall further certify that such purchaser signed his name on said license in the presence of the seller. The provisions of this section shall not apply to the purchase of pistols from wholesalers by dealers regularly engaged in the business of selling pistols at retail, nor to the sale, barter or exchange of pistols kept solely as relics, souvenirs or curios.

**Unlawful to manufacture, etc., certain firearms, etc.** SEC. 3. It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic **Penalty for violation.** knuckles, sandclub, sandbag or bludgeon. Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand

dollars or imprisonment in the state prison not more than five years, or by both such fine and imprisonment in the discretion of the court. The provisions of this section shall not apply, however, to any person, firm or corporation manufacturing firearms, explosives or munitions of war by virtue of any contracts with any department of the government of the United States, or with any foreign government, state, municipality or any subdivision thereof.

Sec. 4. Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or other firearm or dagger, dirk, razor, stiletto or knife having a blade over three inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Felony, what deemed. Penalty.*

Sec. 5. No person shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him. No person shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license therefor as herein provided. Any person violating the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Unlawful to carry, etc., dagger, etc.*

Sec. 6. The prosecuting attorney, the commissioner or chief of police and the commissioner of public safety or their respective authorized deputies in incorporated cities or in incorporated villages having an organized department of police, and the prosecuting attorney, the commissioner of public safety or their authorized deputies, and the sheriff, under-sheriff or chief deputy sheriff in parts of the respective counties not included within incorporated cities or villages shall constitute boards exclusively authorized to issue licenses to carry pistols concealed on the person to applicants residing within the respective territories herein mentioned. The county clerk of each county shall be clerk of such licensing boards, which boards shall be known in law as "The Concealed Weapon Licensing Board." No such license to carry a pistol concealed on the person shall be granted to any person except he be nineteen years of age or over and has resided in this state six months or over, and in no event shall such license be issued unless it appears that the applicant has good reason to fear injury to his person or property, or has *Concealed weapon licensing board. To whom license granted.*

A-81

890               PUBLIC ACTS, 1927—No. 372.

other proper reasons, and that he is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. The prosecuting attorney shall be the chairman of the said board, which shall convene at least once in each calendar month and at such other times as they shall be called to convene by the chairman. Such licenses shall be issued only upon written application signed by the applicant and on his oath and upon forms provided by the commissioner of public safety. Such licenses shall issue only with the approval of a majority of said board and shall be executed in triplicate upon forms provided by the commissioner of public safety and shall be signed in the name of the concealed weapon licensing board by the county clerk and the seal of the circuit court affixed thereto. One copy of such license shall be delivered to the applicant, the duplicate of said license shall be retained by the county clerk as a permanent official record for a period of six years, and the triplicate of such license shall be forwarded to the commissioner of public safety who shall file and index licenses so received by him and keep the same as a permanent official record for a period of six years. Each license shall be issued for a definite period of not more than one year, to be stated in the license, and no renewal of such license shall be granted except upon the filing of a new application. Every license issued hereunder shall bear the imprint of the right thumb of the licensee, or, if that be not possible, of the left thumb or some other finger of such licensee. Such licensee shall carry such license upon his person at all times when he may be carrying a pistol concealed upon his person and shall display such license upon the request of any peace officer.

*Chairman of board.*

*Duration of license.*

SEC. 7. All licenses heretofore issued in this state permitting a person to carry a pistol concealed upon his person shall expire at midnight, December thirty-one, nineteen hundred twenty-seven.

*When license to expire.*

SEC. 8. The licensing board herein created by section six may revoke any license issued by it upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act, or has been convicted of a felony. Such license may also be revoked whenever in the judgment of said board the reason for granting such license shall have ceased to exist, or whenever said board shall for any reasonable cause determine said licensee to be an unfit person to carry a pistol concealed upon his person. No such license shall be revoked except upon written complaint and then only after a hearing by said board, of which at least seven days' notice shall be given to the licensee either by personal service or by registered mail to his last known address. The clerk of said licensing board is hereby authorized to administer an oath to any person testifying before such board at any such hearing.

*When license revoked.*

SEC. 9. On or before the first day of November, nineteen hundred twenty-seven, any person within this state who owns or has in his possession a pistol as defined in this act, shall, if he reside in an incorporated city or an incorporated village having an organized police department, present such weapon for safety inspection to the commissioner or chief of police of such city or village; if such person reside in a part of the county not included within the corporate limits of such city or village he shall so present such pistol for safety inspection to the sheriff of such county. Any person owning or coming into possession of a pistol after the first day of November, nineteen hundred twenty-seven, shall forthwith present such pistol for safety inspection in the manner provided in this section. A certificate of inspection shall thereupon be issued in triplicate on a form provided by the commissioner of public safety, containing the name, age, address, description and signature of the person presenting such pistol for inspection, together with a full description thereof; the original of such certificate shall be delivered to the registrant; the duplicate thereof shall be mailed to the commissioner of public safety and filed and indexed by him and kept as a permanent official record for a period of six years, and the triplicate of such certificate shall be retained and filed in the office of said sheriff, or commissioner or chief of police, as the case may be. The provisions of this section shall not apply to wholesale or retail dealers in firearms or to collections of pistols kept solely for the purpose of display, as relics, souvenirs, curios or antiques, nor to weapons heretofore registered under the provisions of section eleven of act number three hundred thirteen of the public acts of nineteen hundred twenty-five. Any person who fails to comply with the provision of this section shall be guilty of a misdemeanor and shall be punished by a fine not exceeding one hundred dollars or imprisonment in the county jail not exceeding ninety days, or by both such fine and imprisonment in the discretion of the court.

*Safety inspection of weapons.*

*Certificate issued.*

SEC. 10. No pawnbroker shall accept a pistol in pawn. Any person violating this section of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail for not more than ninety days or by both such fine and imprisonment in the discretion of the court.

*Pistol not accepted in pawn.*

SEC. 11. No person shall wilfully alter, remove or obliterate the name of the maker, model, manufacturer's number or other mark of identity of any pistol. Possession of any such firearm upon which the number shall have been altered, removed or obliterated, shall be presumptive evidence that such possessor has altered, removed or obliterated the same. Any person convicted under this section shall be punished by a fine not to exceed five hundred dollars or by imprisonment

*Alteration of pistol unlawful.*

in the state prison not to exceed two years or by both such fine and imprisonment in the discretion of the court.

**Exceptions to act.** SEC. 12.   The provisions of section two, three, five and nine shall not apply to any peace officer of the state or any subdivision thereof who is regularly employed and paid by the state or such subdivision, or to any member of the army, navy or marine corps of the United States, or of organizations authorized by law to purchase or receive weapons from the United States or from this state, nor to the national guard or other duly authorized military organizations when on duty or drill, nor to the members thereof in going to or returning from their customary places of assembly or practice, nor to a person licensed to carry a pistol concealed upon his person issued by another state, nor to the regular and ordinary transportation of pistols as merchandise, or to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

**When unlawfully possessed.** SEC. 13.   When complaint shall be made on oath to any magistrate authorized to issue warrants in criminal cases that any pistol or other weapon or device mentioned in this act is unlawfully possessed or carried by any person, such magistrate shall, if he be satisfied that there is reasonable cause to believe the matters in said complaint be true, issue his warrant directed to any peace officer, commanding him to search the person or place described in such complaint, and if such pistol, weapon or device be there found, to seize and hold the same as evidence of a violation of this act.

**Forfeited to state.** SEC. 14.   All pistols, weapons or devices carried or possessed contrary to this act are hereby declared forfeited to the state.

**Certain books, etc., unlawful to sell, etc.** SEC. 15.   It shall be unlawful to sell or deliver within this state, or to offer or expose for sale, or to have in possession for the purpose of sale, any book, pamphlet, circular, magazine, newspaper or other form of written or printed matter offering to sell or deliver, or containing an offer to sell or deliver to any person within this state from any place without this state any pistol or any weapon or device mentioned in section three hereof.   The provisions of this section shall not apply to sales of or offers to sell pistols at wholesale to persons regularly engaged in the business of selling such pistols at wholesale or retail, nor to sales or offers to sell such pistols made or authorized by the United States government or any department or agency thereof.

**Penalty for violation.** SEC. 16.   Any person violating the provisions of section fifteen of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed one hundred dollars, or by imprisonment in the county jail not to exceed ninety days, or by both such fine and imprisonment in the discretion of the court.

SEC. 17. Act number two hundred seventy-four of the public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen, are hereby repealed: *Provided, however,* That any proceedings pending under any of said sections herein repealed shall not be affected hereby but shall be concluded in accordance with the law of such repealed section or sections. <span style="float:right">Acts repealed.</span> <span style="float:right">Proviso.</span>

SEC. 18. This act is declared to be severable, and should any section hereof be hereafter declared unconstitutional or otherwise invalid, the remainder of the act shall not be affected thereby. <span style="float:right">Saving clause.</span>

Approved June 2, 1927.

---

[No. 373.]

AN ACT to amend section twenty-five of chapter thirty of act number three hundred fourteen of the public acts of nineteen hundred fifteen, entitled "An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms of civil actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in civil actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act." being section thirteen thousand two hundred fifty-three of the compiled laws of nineteen hundred fifteen, as amended by act number two hundred forty-three of the public acts of nineteen hundred seventeen, and to add a new section thereto to stand as section thirty-one.

*The People of the State of Michigan enact:*

SECTION 1. Section twenty-five of chapter thirty of act number three hundred fourteen of the public acts of nineteen <span style="float:right">Section amended.</span>

A-85

corrected thereby, and shall be certified by the proper officers of the municipality as to authorization and by an engineer or surveyor as to correctness, and the signatures of such persons shall be acknowledged in like manner as a deed.

Such plat or plats when so certified and acknowledged may be filed in the office of the register of deeds and the declaration thereon may be recorded at length in a "Book of Plat Certificates"; and when so filed and recorded such plat or plats and declaration together with the record thereof shall be prima facie evidence in all matters shown or stated therein as to the lands covered thereby.

This act shall not apply to a city whose charter provides for official supervision of plats by municipal officers, commission or board.

Approved April 10, 1933.

## CHAPTER 189—H. F. No. 166 ·

*An act to amend Mason's Minnesota Statutes of 1927, Section 7456, relating to renewal of corporate existence.*

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Publication of notices of renewal of corporate existence.**—That Mason's Minnesota Statutes of 1927, Section 7456, be amended so as to read as follows:

"7456. No such resolution shall take effect until a duly certified copy thereof shall have been filed, recorded, and published in the same manner as its original certificate. *Provided, that in the case of a co-operative association, it shall not be necessary to publish said resolution.*"

Approved April 10, 1933.

## CHAPTER 190—H. F. No. 189

*An act making it unlawful to use, own, possess, sell, control or transport a "machine gun", as hereinafter defined, and providing a penalty for the violation thereof.*

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Definitions.**—(a) Any firearm capable of loading or firing automatically, the magazine of which is capable of holding more than twelve cartridges, shall be a machine gun within the provisions of this Act.

(b) Any firearm capable of automatically reloading after each shot is fired, whether firing singly by separate trigger pressure or firing continuously by continuous trigger pressure; which said firearm shall have been changed, altered or modified to increase the magazine capacity from the original design as manufactured by the manufacturers thereof, or by the addition thereto of extra and/or longer grips or stocks to accomodate such extra capacity, or by the addition, modification and/or attachment thereto of any other device capable of increasing the magazine capacity thereof, shall be a machine gun within the provisions of this Act.

(c) A twenty-two caliber light sporting rifle, capable of firing continuously by continuous trigger pressure, shall be a machine gun within the provisions of this Act. But a twenty-two caliber light sporting rifle, capable of automatically reloading but firing separately by separate trigger pressure for each shot, shall not be a machine gun within the provisions of this Act and shall not be prohibited hereunder; whether having a magazine capacity of twelve cartridges or more. But if the same shall have been changed, altered, or modified, as prohibited in section one (b) hereof, then the same shall be a machine gun within the provisions of this Act.

Sec. 2. **Application.**—This Act shall not apply to sheriffs, coroners, constables, policemen or other peace officers, or to any warden, superintendent or head keeper of any prison, penitentiary, county jail or other institution for retention of any person convicted of or accused of crime, while engaged in the discharge of official duties, or to any public official engaged in the enforcement of law; nor to any person or association possessing a machine gun not useable as a weapon and possessed as a curiosity, ornament or keepsake; when such officers and persons and associations so excepted shall make and file with the Bureau of Criminal Apprehension of this state within 30 days after the passage of this Act, a written report showing the name and address of such person or association and the official title and position of such officers and showing a particular description of such machine gun now owned or possessed by them or shall make such report as to hereinafter acquired machine guns within 10 days of the acquisition thereof; nor to any person legally summoned to assist in making arrests or preserving peace, while said person so summoned is engaged in assisting such officer; nor shall this Act apply to the armed forces of the United States or of the State of Minnesota.

Sec. 3. **Machine guns prohibited.**—Any person who shall own, control, use, possess, sell or transport a machine gun, as herein defined, in violation of this Act, shall be guilty of a felony.

Approved April 10, 1933.

---

## CHAPTER 191—S. F. No. 336

*An act to amend Mason's Minnesota Statutes of 1927, Section 646 relating to claims against counties.*

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Claims against county—appeal.**—That Mason's Minnesota Statutes of 1927, Section 646, be amended to read as follows:

"646. When any claim against a county is disallowed by the board in whole or in part, a claimant may appeal from its decisions to the district court by causing a written notice of such appeal to be filed in the office of the auditor within fifteen days after *written notice mailed to said claimant by the county auditor showing the disallowance of said claim* and giving security for costs, to be approved by the auditor, who shall forthwith notify the county attorney thereof. When any claim against a county shall be allowed in whole or in part by such board, no order shall be issued in payment of the same or any part thereof until after fifteen days from date of the decision; and the county attorney may, on behalf and in the name of such county, appeal from such decision to the district court, by causing a written notice of such appeal to be filed in the office of the auditor within fifteen days after date of the decision appealed from; or any seven taxpayers of the county may in their own names appeal from such decision, to the district court by causing a written notice of appeal stating the grounds thereof to be filed in the office of the auditor within fifteen days after the date of the decision appealed from, and giving to the claimant security for his costs and disbursements to be approved by a judge of the district court; and thereafter no order shall be issued in payment of any such claim until a certified copy of the judgment of the court shall be filed in the office of the auditor. Upon the filing of such notice of appeal, the court shall acquire jurisdiction of the parties and of the subject matter, and may compel a return to be made as in the case of an appeal from a judgment of a justice of the peace.

Approved April 10, 1933.

## *Va. Code Ann. § 18.2-288*

Current through the 2023 Regular Session

*Code of Virginia 1950  >  Title 18.2. Crimes and Offenses Generally. (Chs. 1 — 13)  >  Chapter 7. Crimes Involving Health and Safety. (Arts. 1 — 8)  >  Article 5. Uniform Machine Gun Act. (§§ 18.2-288 — 18.2-298)*

## § 18.2-288. Definitions.

When used in this article:

**(1)** *"Machine gun"* applies to any weapon which shoots or is designed to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

**(2)** *"Crime of violence"* applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault with intent to maim, disable, disfigure or kill, robbery, burglary, housebreaking, breaking and entering and larceny.

**(3)** *"Person"* applies to and includes firm, partnership, association or corporation.

## History

Code 1950, § 18.1-258; 1960, c. 358; 1975, cc. 14, 15.

Code of Virginia 1950
Copyright © 2023 Code of Virginia (Annotated)
Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

**End of Document**